## CONNELLY vs. BOWIE.

APPEAL from *Montgomery* county court. Trespass *quare clausum fregit.* The general issue was pleaded; and at the trial, the plaintiff, (now appellee,) offered in evidence the plots and explanations returned to the court, and the patent of the tract of land called *Hermitage,* (on which the trespass is alleged to have been committed,) granted to *William Joseph* on the 6th of June 1689, for 3866 acres. The third course of this grant is described, "thence south south west fifty perches to a bounded red oak by another small run." He then offered in evidence a deed from *Benjamin Harris* to *John Bowie,* junr. dated the 14th of November 1748, for a tract called *Harris's Adventure Enlarged,* being part of a tract called *Hermitage,* and described as "beginning at the end of 100 perches on the third line of a tract or parcel of land now in possession of *Benjamin Perry,* called *Hermitage,* and running thence S 32°. E. 130 ps. then N 71¼°. E 156 ps. then," &c. containing 405¾ acres. He also gave in evidence a deed from *Thomas Boteler,* of *Prince-George's* county, to *Benjamin Perry,* of the same county, dated the 14th of July 1738, for 200 acres of land, being part of a tract called *Hermitage,* and described by courses and distances. This deed was thus acknowledged: "Memorandum. On the day and year within written, came the within named *Thomas Boteler,* and acknowledged the within land and premises to be the right of the within named *Benjamin Perry,* his heirs and assigns, for ever.

"*John Beall,*
"*Turner Wootton.*"

This deed was recorded amongst the land records of *Prince-George's* county on the 8th of July 1738, (*Montgomery* county not having been erected into a county until the year 1776,) and was located by the plaintiff on the plots. To the reading of these deeds the defendant objected; but the court, [*Ridgely* and *Kilgour,* A. J.] overruled the objection, and permitted them to be read in

Where part of a tract of land called *H* is conveyed, and calls to begin at the end of 100 perches on the third line of *H,* as owned by *P,* and the third line of *H* is described in the grant, "S. S. W. 50 perches to a bounded red oak"—Whether the parties intended that the beginning should commence at the end of 100 perches of the third line of that part of the tract which was owned by *P,* or at some other point, is a question of fact for the jury.

Where the official character of the persons before whom the acknowledgment of a deed for lands executed in 1738, does not appear on the face of the acknowledgment, and it is equally silent as to the county in which it was taken, and there is no evidence to warrant the presumption that the original deed was acknowledged in conformity to the provisions of the act of 1715, ch 47, a copy cannot *per se* be read in evidence.

No official copy of a deed, or other instrument of writing, is *per se* evidence, except the original is required to be recorded.

evidence; the defendant excepted, and appealed, the verdict and judgment being for the plaintiff.

The cause was argued before CHASE, Ch. J. BUCHANAN, EARLE, MARTIN, DORSEY, and STEPHEN, J. by

T. B. Dorsey, (Attorney-General,) for the Appellant, and by

Magruder, for the Appellee.

The opinion of the court was delivered by

DORSEY, J. This was an action of trespass *quare clausum fregit*, brought in *Montgomery* county court, by *John Bowie*, the appellee, against *John Connelly*, the intestate of the appellant. The general issue was joined, and defence on warrant taken. The plaintiff below located, on plots filed in the cause, a tract of land called *The Hermitage*, granted to *William Joseph* on the 6th of June 1689, for 3866 acres. He also located a deed executed on the 14th of November 1748, by *Benjamin Harris* to *John Bowie*, for a tract of land called *Harris's Adventure Enlarged*, being part of a tract of land called *The Hermitage*, and he made a location of a deed said to be executed on the 4th of July 1738, by *Thomas Boteler* to *Benjamin Perry*, for 200 acres of land, part of *The Hermitage*. The defendant counterlocated the tract of land called *The Hermitage*, as also the deed from *Harris* to *Bowie* for *Harris's Adventure Enlarged*. The plaintiff at the trial gave in evidence the grant of *The Hermitage*, and the plots and explanations, and offered to read to the court and jury the deed executed by *Harris* to *Bowie*, for *Harris's Adventure Enlarged*, as also the copy of a deed purporting to be executed on the 4th of July 1738, by *Thomas Boteler* to *Benjamin Perry*, for 200 acres, part of *The Hermitage*, and certified under the hand and official seal of the clerk of *Prince George's* county court, to be truly copied from the land records of that county. The defendant, by his counsel, objected to these papers being read to the jury. but the court below declared they were admissible evidence in the cause, and they were accordingly read. To this opinion the defendant excepted. And this court are of opinion, that the deed executed by *Harris* to *Bowie* was correctly admitted in evidence, but that the paper, purporting to be the copy of a deed from *Boteler* to *Perry*,

1823.

Connelly
vs
Bowie

ought not to have been read to the jury. *First*, as to the admissibility of *Harris's* deed. It calls to begin at the end of one hundred perches on the third line of *The Hermitage*, owned by *Perry*. The third line of *The Hermitage* is thus described in the grant, "south south west fifty perches to a bounded red oak by another small run." It is most apparent that the parties to the deed could not mean to refer to a point in the third line of the whole tract as the beginning, as that line is only fifty perches long; whether they intended that the beginning should commence at the end of one hundred perches on the third line of that part of the tract which was owned by *Perry*, or at some other point, was a question of fact to be tried by the jury; and as the plaintiff had located this deed, according to its courses and distances, the court think that it was legally admissible in evidence. *Secondly*, as to the admissibility of the writing, purporting to be a copy of a deed from the records of *Prince-George's* county. The endorsement, as certified by the clerk, is in the following words: "Memorandum. That on the ... day and year within written came the within named *Thomas Boteler*, and acknowledged the within land and premises to be the right of the within named *Benjamin Perry*, his heirs and assigns, for ever.

*John Beall*,

*Turner Wootton.*"

The official character of the persons before whom the supposed acknowledgment was taken, does not appear on the face of it, and the paper is equally silent as to the county in which the acknowledgment was taken, nor is there any proof in the record showing that *John Beall* and *Turner Wootton* were justices of the peace, or that the acknowledgment was made in the county in which the lands were then situate. This copy *per se*, cannot be read in evidence unless the original was required to be recorded. By the act of 1715, *ch.* 47, it is declared, that no manors, lands, tenements or hereditaments, shall pass from one to another, whereby an estate of inheritance or freehold, or any estate above seven years, shall be made, or take effect in any person, by reason of a deed of bargain and sale, except the same be made by writing, indented and sealed, and be acknowledged in the provincial court, or before a judge thereof, or in the county court, or before two justices

HARVARD ... LIBRARY

of the same, where such manors, lands, tenements, and hereditaments do lie, and enrolled within six months after the date of such writing, indented as aforesaid." Now, as there is no evidence in this case to warrant the presumption that the original was acknowledged in conformity to the provisions of the act, a copy cannot *per se* be read as evidence, for copies are only admissible in proof when the originals are required to be recorded to give them legal efficacy. This copy must therefore be considered as inofficial, and can only be used under the same limitations and exceptions as private copies of deeds, or other instruments of writing. If the plaintiff had offered evidence that *Benjamin Perry*, and those claiming under him, had possessed and enjoyed the land under *Boteler's* title, a strong foundation would have been laid for presuming that the original deed was acknowledged in conformity to the provisions of law, but in the absence of all such proof, there is no room for healing inferences. The court are of opinion, that the judgment of the court below must be reversed, and that a *procedendo* be awarded.

JUDGMENT REVERSED.