# WHEELING.

## KNOTT v. SEAMANDS.

Submitted January 21, 1884.   Decided November 15, 1884.

| 25 | 99 |
|----|----|
| 42 | 520 |

| 25 | 99 |
|----|----|
| 43 | 408 |

| 25 | 99 |
|----|----|
| 44 | 195 |

| 25 | 99 |
|----|----|
| 59 | 142 |

| 25 | 99 |
|----|----|
| f63 | 274 |

1. The statute giving the right to a defendant to defend at law or obtain relief in equity, if he avails himself of his right to make his defence at law, and a judgment is rendered against him, he cannot afterwards obtatn relief in equity. (p. 103.)

2. If he files his equitable plea at law, and issue is taken thereon, and a trial had, and verdict given against him, which is set aside by the court, if he then withdraws his pleas, he may still resort to equity for relief. (p. 104.)

3. A defendant at law having a legal defence to the action and a distinct ground of equitable relief against the plaintiff's claim may bring his suit in equity without waiting for the determination of the suit at law, and may without being compelled to waive his legal defence by confessing judgment have a hearing in the court of chancery on the merits of his case and a decree for the proper relief. But whether an injunction will be awarded without requiring a cenfession of judgment at law, is discretionary with the judge granting the injunction. (p. 104.)

4. A case in which it is held, that the contract and notes were not procured by fraud, and that the notes had a sufficient consideration to support them. (p. 105.)

JOHNSON, PRESIDENT, furnishes the following statement of the case:

This is a suit in equity brought by Knott against Seamands in the circuit court of Cabell county in June, 1881.

On the 18th day of February, 1873, the plaintiff and defendant entered into the following contract: "Know all men by these presents, that for and in consideration of the premises and covenants hereinafter set forth on the part of Samuel W. Knott, the party of the second part to this agreement, I. Wm. R. Seamands, of Cabell county, West Virginia, the party of the first part, do hereby sell and convey and have by these presents sold and conveyed to the said Samuel W. Knott the following property, to-wit: One-half of the entire interest owned, held or controlled by the said Wm.

R. Seamands in to and of any and all lands, rights of way to and through the same for rail and other roads, and one-half of all his rights, privileges, reservations, &c., in any way owned, held or controlled in fee, by contract, or equity, in and to any minerals, coal and other valuable things in or on any lands owned, controlled or in which he has a legal or equitable right, as well as any and all options for the sale or otherwise of any and all lands, rights of minerals, coals or other valuable things in or on any lands in Cabell, Lincoln or Wayne counties in the State of West Virginia, as well as all rights, interests in or other valuable privileges or franchises to any corporation, right of way or other privilege in, to or in any way connected with the property hereby conveyed, or to any road reaching into or through said lands, and privileges granted by the State of West Virginia as is witnessed by an act incorporating the Huntington & Guyan River Mineral Railway Company. All the rights, privileges and franchises conferred or intended to be conferred by said act are hereby sold to the said Samuel W. Knott.

In consideration of all which done and to be done and performed as hereinbefore set forth on the part of the said W. R. Seamands, the said Samuel W. Knott has paid and secured to be paid to the said W. R. Seamands the sum of $1,150.00 in manner and form satisfactory to both parties. In testimony whereof the parties to the foregoing contract have hereunto set their hands and seals, this 18th day of February 1873, by which they bind themselves, their heirs and assigns forever."

In pursuance of this contract the said Knott paid Seamands $100.00, and at the same time executed his two notes, payable to said Seamands, one for $400.00, payable in thirty days after date, and the other for $650 00, payable three years after date. On March 24, 1874, the said Seamands brought an action of debt on the note for $400.00 in the county court of Cabell county. There was a special plea of fraud and failure of consideration filed in the cause, and a jury sworn to try the issue, which jury being unable to agree were discharged. On January 23, 1877, the action was removed to the circuit court. On June 28, 1877, the said Seamands brought in the circuit court of Cabell county against said Knott an action of debt on said

note for $650.00.   The two actions were consolidated, and the
defendant under the statute filed another special plea of
fraud in the procurement of said notes and failure of consid-
eration.   Issue was taken on said plea, and on August 28,
1878, a jury rendered a verdict for the plaintiff for the whole
debt due.   This verdict the court on motion set aside, on
the ground that the verdict was not responsive to the issue,
and granted the defendant a new trial.   On April 7, 1879,
the defendant by leave of the court withdrew all his pleas
filed in said actions, reserving equity.

Shortly thereafter the defendant Knott filed his bill of in-
junction in the circuit court of Cabell county against said
Seamands, in which he charged that said notes were procured
from him by the fraud of said Seamands, and that they were
executed without consideration.   He alleges that Seamands
falsely and fraudulently represented to him, that he had pro-
cured from the Legislature of West Virginia a charter incor-
porating the Huntington and Guyan River Railway Com-
pany, and that he was one of the incorporators; that as one
of the corporators in said company he was the owner of and
vested with large and valuable rights, privileges and fran-
chises, the one-half of which he proposed to sell and convey
to the plaintiff; that he further falsely and fraudulently rep-
resented, that he was the owner in fee of large interests or
large and valuable tracts of land in Cabell, Lincoln and
Wayne counties, the one-half of which interests he proposed
to sell and convey to the plaintiff; also, that he was the
owner of the minerals in whole and in part in large quanti-
ties of the land lying along and adjacent to the tract of the
said railway, when it should be built; and of valuable rights-
of-way for said railroad and other roads through said lands;
and that he held large and valuable options for the sale of
large quantities of land along the route of said railroad, the
one-half of all which he proposed to sell the plaintiff; that
he went along the route of said road for some distance, and
the defendant showed him the lands, which defendant claimed
to own, and believing defendant owned them he entered into
the contract, (which has already been copied,) but by mistake
and inadvertance Enslow, the scrivener, failed to insert in the
contract the specific quantity of lands, an interest in which

was owned by defendant, which he represented to be 25,000 acres; that plaintiff repeated these representations to certain capitalists in Ohio, and one was induced thereby to agree to subscribe largely to the capital of the said railroad company, and assist in building said road, and procure others to do so; that plaintiff afterwards ascertained, that said act of incorporation had never passed, and that defendant had only acquired an interest in a few hundred acres of land; that as soon as it was ascertained that there existed no charter for the road, the Ohio capitalist refused to have anything to do with the matter.

He charges that the plaintiff has conveyed to him nothing for his notes, and that the consideration therefor has entirely failed. He prays an injunction to the prosecution of the said two actions at law; that the said contract be cancelled; that his said two notes be surrendered to him; and that a perpetual injunction be granted, and for general relief.

The defendant answers the bill, and insists that, as the plaintiff filed his pleas at law, he is barred of any relief in equity. He denies the material allegations and charges of the bill; denies that he made the false representations charged in the bill, avers that he represented the true nature of the interests, rights-of-way and options in said lands, and exhibited to the plaintiff all the evidences of title which he had thereto. He further avers that complainant came to respondent and desired to enter into partnership with him in his land transactions in Cabell, Wayne and Lincoln counties, representing that he could control a great amount of capital, and could influence capitalists in Ohio to embark with this respondent and complainant and take stock in the Huntington and Guyandotte Mineral Railway Company, and gave this respondent ten dollars, he being unable to bear the expenses of such a trip, to defray the expense of going up Guyandotte river that complainant might see for himself the country and the route of the proposed railroad; and said plaintiff did, before entering into said contract and before executing said notes, make said trip through the country and conversed with the landowners, who had given the right of way and options in their lands; that he refused to rely on any representations respondent made, but examined for himself, and after such examination and conversation with the land-owners he executed

the contract which he now seeks to annul. He denies that he represented to complainant that the bill to incorporate said railroad company had been passed by the Legislature, but avers he told him the exact truth about it, that it had passed the House and failed to pass the Senate for want of time. He denies that there was no consideration for the notes, and avers that the failure to build the proposed railway was due mainly to the negligence and non-performance of stipulations which were to have been performed by plaintiff.

Depositions were taken on both sides; and on May 28, 1882, a decree was entered holding, that the contract and notes were not procured by fraud, and that they were not executed without consideration, and ascertained that the amount due was $1,167.80, and entered a decree for that amount with the costs in favor of Seamands against Knott. From this decree Knott obtained an appeal with supersedeas.

*J. H. Ferguson*, for appellant.

*W. S. Laidley*, for appellee.

JOHNSON, PRESIDENT:

Has equity jurisdiction in this cause? The defendant in the action at law having under the statute filed his equitable pleas, and a verdict having been rendered against him, which was set aside as not being responsive to the issue, could he then by leave of the court withdraw his plea, reserving equity, and invoke the aid of the court of chancery? Section 6 of chapter 126 of the Code provides as follows:

"If a defendant entitled to such plea, as is mentioned in the preceding section, shall not tender it, or though he tender it, if it be rejected for not being offered in due time, he shall not be precluded from such relief in equity, as he would have been entitled to, if the preceding section had not been enacted. If an issue in fact is joined on such plea, and the same be found against the defendant, he shall be barred of relief in equity upon the matters alleged in the plea, unless upon such ground as would entitle a party to relief against a judgment in other case."

The statute giving the right to a defendant to defend at law or obtain relief in equity, if he avails himself of his right

to make his defence at law, and a judgment is given against him, he cannot afterwards obtain relief in equity. (1 Bart. Ch. Pr. 41. *Penn* v. *Reynolds*, 23 Grat. 523; *Sanders* v. *Branson*, 22 Grat. 364.) In this case there was no judgment at law against him. There was a verdict, which was set aside because not responsive to the issues. Thereupon the defendant withdrew his pleas reserving equity and instituted this suit in chancery for relief. It was in the discretion of the judge of the trial-court to permit or refuse the withdrawal of the pleas; a discretion only reviewable on writ of error in that case. That not having been done, we must presume he properly exercised his discretion; and the pleas having by leave of court been withdrawn, he was wholly undefended at law and had a right to resort to a court of equity, and the court had jurisdiction of the cause.

But should the chancellor in the exercise of his discretion, before he granted the injunction, have required the applicant to confess the judgment at law? It has frequently been held, that one who comes into equity for relief against proceedings at law, and who seeks to enjoin such proceedings, will be granted relief only upon condition of his first confessing judgment at law. The principle, upon which the rule is based, is said to be, that whenever a person resorts to equity for substantive relief against a claim asserted at law, he must submit himself entirely and without reserve to the jurisdiction of the chancellor. The rule however, if rule it may be called, is by no means inflexible; and where one has a distinct ground of equitable relief aside from his defense at law, he is not obliged to abandon his legal defense by confessing judgment before proceeding in equity to enjoin the suit at law. But where complainant in his bill expressly offers to withdraw his defense at law and submit to judgment, for the reason that his relief is alone in equity, he is entitled to an injunction. (High on Injunctions, sec. 59, and cases cited.)

The better doctrine is, that the question of requiring a defendant at law, who seeks upon equitable grounds to enjoin the action against him, to first confess judgment at law as a condition of relief in equity, rests in the discretion of the court, to be exercised according to the circumstances of the

case upon well defined principles of equity and law. The object to be attained in such cases is to preserve the rights of the person enjoined and at the same time to inflict no wrong on him who seeks relief in equity. The court should not require the defendant at law to confess judgment, if such course would manifestly endanger his rights, or when his bill wholly denies the right of the plaintiff at law to recover. And if the injunction is granted upon such terms, the confession should be required only upon the terms, that the judgment shall afterwards be dealt with, as a court of equity may direct. Where therefore a defendant at law has been allowed an injunction against the action upon condition of his confessing judgment thereon, and the injunction is afterwards dissolved for want of equity, the plaintiff in the action at law should be required to withdraw the judgment, which they have thus obtained, in order that the cause may be tried at law upon its merits. (High on Injunctions, sec. 60, and case cited.) This section from High on Injunctions we approve.

A defendant at law having a legal defense to the action, and a distinct ground of equitable relief against the plaintiff's claim may bring his suit in equity without waiting for the determination of the suit at law, and may without being compelled to waive his legal defense by confessing judgment have a hearing in a court of chancery on the merits of his case and a decree for the proper relief. But it ought to have appeared in plaintiff's bill, whether he had or relied on any legal defense, and if he had not, the court in its discretion, before the injunction was granted, should have required a confession of judgment at law. (*Warwick* v. *Norvell*, 1 Rob. 308; *Great Falls Co.* v. *Henry's Adm'r*, 25 Grat. 575.)

Were the contract and notes procured by fraud, and were the notes executed without consideration? The evidence convinces us, that Seamands was a man without much property, and that this fact was known to Knott. This clearly appears from the depositions of the plaintiff and defendant, as they agree that, before the contract was closed, Knott gave Seamands $10.00 to go with him over the line of the proposed railroad and show him the route, lands, &c. Knott in his deposition says in substance, that he had conditionally made the

contract; that if he "was satisfied with the prospect of the enterprise," he would then accept Seamands's terms. By the word "enterprise" he referred to the building of the railroad. If he was satisfied, the $10 would be a payment on the contract; if not, it would be forfeited. In answer to the question: "Who did you understand was to build the railroad?" the plaintiff said: "Parties whom I might induce by showing them these interests and conveying to them a part thereof." He further said that Seamands's options as a general thing were oral. He admits, that, after he signed the contract, he went to work to obtain written contracts from parties along the line of the proposed road for interests in lands, one-half the minerals, rights of way, &c., nine of which contracts are a part of the record. He says, that nearly all those contracts were written by him and were taken to himself and Wm. R. Seamands jointly. To our minds these contracts show how Knott understood the contract between himself and the defendant.

One of the contracts executed on the 7th day of March, a little over two weeks after the contract of February 18 was executed, provides as follows: "That for and in consideration of the sum of one dollar, the receipt of which is hereby acknowledged in full, the said parties of the first part agree to sell and convey to the said Knott and Seamands an undivided one half interest in all minerals or other valuable thing which may in future be developed, contained in all or any of their lands in the counties of Cabell, Lincoln or Wayne, State of West Virgina, and all and exclusive rights of way for railroads or other roads, or privileges, necessary to develop the mineral resources of said lands. Upon consideration, however, that said Knott and Seamands are to convey one-half of their interests to *some internal improvement company* whom they may select, by whose improvement the mineral resources of said lands may be developed; and when such company shall be organized for the purpose aforesaid then we bind ourselves to convey by deed of general warranty the aforesaid interest to said Samuel W. Knott and Wm. R. Seamands."

The only contract that mentions the railroad company referred to in the contract of February 18, even if that

does, is the one marked No. 2, executed on March 14, 1873, which contains the following language: "The exclusive right of way for a railroad through their respective lands, running from the city of Huntington on the Ohio river to the coal fields on Guyandotte river; the said road to be known as the Huntington and Guyandotte River Mineral and Mining Railway Company." It will be observed that this is not the name of the road mentioned in the contract of February 18. That road is there called "The Huntington and Guyan River Mineral Railway Company."

Seamands in his deposition says he did not represent that a railroad had been chartered; but that he told him the truth about it, that the act had passed the House but failed to pass the Senate for want of time; and in answer to the question, why that clause, which referred to the railroad, was put in the contract, said: "Mr. Knott had that inserted to take to Ohio to show people what he had here." Knott's subsequent action in writing the contracts above referred to shows, that he did not rely on that clause in the contract.

Without referring further to the evidence we are convinced from the whole record, that Knott was not defrauded; that he was not by fraud induced to sign the contract and notes; and that there was a sufficient consideration to support the notes. He made no complaint of fraud or failure of consideration until after he was sued on the $400.00 note. He evidently knew, that Seamands was a poor man; that he had talked with the people, and had promises from them as to making contracts; that he had some written contracts, but that most of them were verbal; that for $1,150 he took Knott in as equal with himself, and they were to work it up together, expecting if they succeeded, to make a good speculation, but if they failed, to make nothing, but lose what they put into the scheme.

In this cause Seamands was entitled to a decree against Knott for the balance due on the two notes, provided he owned them. But there is evidence in the record, which *prima facie* shows, that the note for $400.00 had been assigned to one Vandive, and by Vandive to Vance, and by Vance to Hall, and by Hall to the defendant Knott. It is admitted by counsel for plaintiff in argument, that Seamands is

only entitled to a decree for what is due on the note for $650.

It appears to us, that the plaintiff has no equity, having failed to show any ground for equitable relief. The decree is erroneous, because it should have dissolved the injunction and dismissed the bill. It is therefore reversed with costs to the appellant; and this Court proceeding to do what the circuit court should have done, the injunction granted in this cause is dissolved, and the bill dismissed at plaintiff's costs.

Reversed. Dismissed.