# CHARLESTON.

BIAS *et al.* v. VICKERS *et al.*

Submitted January 20, 1886.—Decided February 13, 1886.

1. Where the plaintiff in a suit exhibits with and makes part of his bill the record of an action at law, the facts disclosed by such record thereby become averments of his bill to be considered in connection with the other averments. (p. 461.)

2. Where a party is entitled to avail himself of an equitable defence under the statute—sec. 5, ch. 126, Code—but does not do so, and a judgment is given against him at law, he will still be entitled to relief in a court of equity under sec. 6 of said statute, and to entitle him to relief in equity against the judgment it is not necessary, that he should aver in his bill any reason or excuse for not availing himself of such equitable defence at law. (p. 461.)

3. If under the provisions of said statute a defendant avails himself of such equitable defence in the action at law, and the same is fairly tested on its merits by issue on the pleas setting forth the matters of such defence, and such issue is found against the defendant, whether such issue was one of law raised by demurrer to the plea or one of fact submitted to a jury, he will thereby be precluded from setting up the same matters in a bill for relief against the judgment at law in a court of equity. (p. 462.)

4. A suit, in which relief in equity against a judgment at law is denied upon the ground that the material matters relied on in the plaintiff's bill for relief had been relied on and adjudicated in the action at law, in which the judgment was rendered. (p. 465.)

*J. H. Ferguson* for appellant.

*J. E. Chilton* and *J. F. Brown* for appellee.

SNYDER, JUDGE:

Bill with injunction indorsed thereon exhibited in the circuit court of Lincoln county by R. S. Bias and others against John H. Vickers and others, to enjoin the defendants from enforcing a judgment upon a forth-coming bond recovered by the defendant Vickers against the plaintiffs. On the motion of said Vickers, the court, on February 12, 1883, dissolved the injunction upon the ground that it had been improvidently awarded, and dismissed the bill with costs. The plaintiffs appealed to this Court.

The sole question to be determined here is, does the bill on its face and by its allegations present sufficient matter to entitle the plaintiffs to relief in a court of equity? In order that they may be more conveniently referred to hereinafter, I shall state in separate classes all the material allegations of the bill, which are as follows:

First.—The plaintiff Bias and the defendant Vickers entered into a contract whereby Vickers sold to Bias 200 trees of a specified kind and size, upon a described boundary of land claimed by Vickers, at one dollar per tree with the privilege of taking a larger number of such trees; the said boundary of land had not then been laid off and was not surveyed for a considerable time afterwards; Bias believed at the time of making said contract from the representations of Vickers that he was the owner of said land and that there

58

were thereon at least 1,000 of such trees, and under this belief Bias together with the plaintiffs, John Alford and T. J. McComas, executed their note to Vickers whereby they promised to pay him $200.00 for 200 such trees with the privilege of more.

Second.—Sometime thereafter, Vickers had said boundary surveyed whereby it was ascertained that a large portion thereof, upon which a large portion of the trees so sold by him stood, was not within the boundaries so claimed by him, but of this fact Bias had no notice until he had sent his hands and teams to cut and haul away said trees under said contract; upon the discovery of these facts a new contract and arrangement was made between Vickers and Bias by which Bias agreed to take all the trees of the description purchased within the lands so surveyed at the price of $1.00 per tree, and Bias was to have the right to haul over the land of Vickers any trees he might buy beyond said survey to the number of 200; and this new contract was made before the aforesaid note became due; under this last mentioned contract Bias cut and hauled from said survey eighty trees which were all he ever got from the said land of Vickers; before all these eighty trees were cut and removed the said note became due and Vickers instituted an action thereon and prosecuted the same to judgment against all the makers of the note in the circuit court of Lincoln county.

Third.—Before and at the time of said action, Vickers falsely and fraudulently represented that there were more than 200 trees of the kind purchased then on the land so surveyed and claimed by him reserved thereon for Bias, and by means of such false and fraudulent representations he procured said judgment on said note; up to and for some time after the trial on said note neither Bias, nor either of the other makers of the note, had any notice or information of the fraudulent character of said representations, but when Bias again went upon said land, he found for the first time that said representations were false, and that instead of 200 such trees there were only sixty-three trees of the kind purchased.

Fourth.—Since the rendition of said judgment an action of trespass has been brought in the United States district court for West Virginia by the claimants of the Smith surveys,

within the boundaries of which the said land of Vickers, on which the said eighty trees were cut is situated, against Bias and others for cutting and removing timber therefrom, and Bias has been enjoined by said court from cutting and removing any trees or timber from said land in a chancery suit brought by the same plaintiffs, so that Bias can not remove any trees from the land claimed by Vickers; and both of said suits are still pending and undetermined and the injunction is also in full force; the plaintiffs are informed and believe that an action of ejectment has been brought and is now pending in said United States district court against Vickers and others to eject them from the lands they claim in said Smith surveys, and they are informed and believe that the title of the claimants of the said Smith surveys is good and valid and has been so held and adjudged in several actions of ejectment brought and prosecuted by the owners thereof.

Fifth.—Bias has paid on said note for 200 trees $125.00 which more than pays for the eighty trees cut as aforesaid, and that he will in all probability be *mulct* in damages in said action of trespass for these same trees, and that by reason thereof the consideration of said note has certainly failed to the extent of fifty-seven trees for which it was given and will probably fail as to all the balance by reason of the aforesaid actions.

Sixth.—That an action against Vickers for damages would in all probability be unavailing for the reason that he has been for sometime in failing circumstances and has been selling and disposing of his property, and has been conveying a portion thereof so as to get it into the hands of his wife, and that in addition to all this Vickers is, as the plaintiffs are informed and believe, also a defendant in said action of trespass in the United States district court.

The plaintiffs pray that the defendants may be enjoined from enforcing said judgment, and that upon final hearing the injunction may be made perpetual and Vickers be adjudged to repay the money so paid to him as aforesaid by Bias, and for general relief.

The bill exhibits and makes part of it, the record of the action at law in which the judgment on the note therein men-

tioned was recovered, which record shows, that said action was *assumpsit* commenced in the county court of Lincoln county in October, 1875; various pleas were filed and defences made, the case was tried twice by jury; first, in November, 1876, when the jury failed to agree, then again in June, 1877, where a verdict was returned for the plaintiff, Vickers, for $227.66; on this verdict the court entered judgment, the defendants obtained a writ of error to the circuit court of said county when the judgment was in September, 1877, reversed and a new trial granted by said court to be tried therein; the plaintiff then filed an amended declaration, and the defendants in addition to the general issue filed an account of offsets and a number of special pleas in writing among which are the following in substance, which I here number for reference merely:

No. 1.—A plea of the tender of $125.00 for the eighty trees gotten by the defendant, Bias. This $125.00 was accepted by the plaintiff, and the court ordered it to be credited on the note.

No. 2—Avers that after the making of the note or contract sued on, a new contract was made between Vickers and Bias by which the original contract was abandoned, and they agreed that in consideration that Bias would pay $1.00 per tree for all trees of a specified description he could find within one mile of the river on a described boundary of Vickers' land, he Bias would release all claim for damages that Vickers had incurred or might be liable for on account of his misrepresentation concerning the quantity, size and location of the timber specified in the original contract, and that Vickers would give Bias the right of way free over his land; under this new contract Bias cut and removed eighty trees which were all the trees within said boundary, and that he has always been ready to pay for said eghty trees and perform his part of said contract, but Vickers refused to permit him to haul over his (Vickers') land, or to perform his part of said contract, to the damage of Bias $200.00, and this he is ready to verify.

N. 3.—Avers that Vickers, just prior to the making of said note, and as an inducement to the contract, falsely represented to Bias that he owned 200 poplar, ash and walnut

trees on a certain boundary of his land, and pointed out such boundary and sold said trees to Bias at $1.00 per tree, and that he had more trees on said land which Bias might have at the same price; Vickers well knew that he did not own said number of trees on said land at that time, but Bias relying on said representations, agreed to pay $1.00 per tree for said trees, and was at great expense in preparing for the removal of the same; and Bias and his co-defendants aver that Vickers did not have 200 trees within said boundary, that there were not over 80 such trees thereon, and that the failure of Vickers to deliver to Bias the whole of said trees is a failure of the consideration of the contract sued on to the extent of 118 trees, of the value of $118.00, and this, &c.

The plaintiff Vickers, as I understand the record, which is somewhat confused, demurred to all of said pleas; the court sustained the demurrer to No. 2, but overruled it as to the others, and issue was joined on No. 3. The case was tried by jury in May, 1881, a verdict found for the plaintiff for $118.00, on which the judgment suoght to be enjoined in the plaintiff's bill was entered by the court.

The amount of the execution enjoined is stated in the bill to be $509.00, thus showing that the plaintiff's cost in proseting his action at law must have been $391.00, that being the difference between the debt mentioned in the said judgment and said execution.

The plaintiffs by exhibiting with and making the record in the action at law a part of their bill necessarily made the facts appearing in said record allegations of their bill to be considered along with its other allegations. *Richardson* v. *Donehoo*, 16 W. Va. 687; *Simpson* v. *Edmiston*, 23 W. Va. 675; *Craig* v. *Sebrell*, 9 Gratt. 131.

Considering then the whole facts disclosed by the allegations of the bill, including those appearing in the law record as a part thereof, the direct question is presented, do the facts alleged in the bill entitle the plaintiffs to relief in a court of equity? So far as the facts alleged entitle the plaintiffs to relief under the provisions of sec. 5, ch. 126 of the Code, their defence is an equitable one and they were not bound to set it up in a court of law. The had the option whether they would make such defence in the action at law or subse-

quently by bill in equity, and when made in equity they are not required to give any reason or excuse for their failure to make such defence at law. *Luddington* v. *Tiffany*, 6 W. Va. 11. But this right is limited or qualifted by the sixth section which provides :

"If a defendant. entitled to such plea as is mentioned in the preceding " (the fifth) " section, shall not tender it, or though he tender it, if it be rejected for not being offered in due time, he shall not be precluded from such relief in equity as he would have been entitled to if the preceding section had not been enacted. If any issue in fact is joined on such plea and the same be found against the defendant, *he shall be barred in equity upon the matters alleged in the plea*, unless upon such as ground as would entitle the party to relief in equity against a judgment in other cases.

It has been repeatedly decided under this statute, that if a defendant avails himself of his right to make his defence at law, and a judgment is given against him, he can not afterwards obtain relief upon the same ground in equity. *Knott* v. *Seamonds*, 25 W. Va. 99 ; *Sanders* v. *Branson*, 22 Gratt. 364 ; *Penn* v. *Reynolds*, 23 Gratt. 523.

The principle thus decided is simply a recognition of the well settled law, that where a matter is the subject of exclusive equity jurisdiction and a statute is enacted giving to a court of law jurisdiction in such matter, the jurisdiction of the two courts will be concurrant and the statute will not be construed as taking from the equity court its jurisdiction ; but if as to such matter of concurrant jurisdiction a party litigates his rights in a court of law he will be precluded upon general principles of law from again litigating that matter in a court of equity. The foundation of this rule is the maxim, " *Interest reipublicæ ut sit finis litium.*" There would be no end to litigation if the party after a trial on the merits of the case in one jurisdiction could as a matter of right go into another and concurrent jurisdiction and there have his case tried *de novo*, and thus entirely ignore the first trial in which the same issues had or might have been tried and fully settled. In accordance with this well settled principle this Court in *Poole* v. *Dilworth*, 26 W. Va. 583 held : " Either party, plaintiff or defendant, is estopped from alleg-

ing in a suit at common law or in chancery anything incon-
sistent with any point, which has been before adjudicated
by a court of either common law or chancery of competent juris-
diction ; and the conclusiveness of any judgment or decree
extends beyond what may appear on the face of the judg-
ment or decree to every point which was at issue and deter-
mined in the course of the proceedings.   A decision upon a
demurrer, though it be but a decree dismissing the plaintiff's
bill, will be conclusive of every matter whether specially
stated in the bill or not, provided it is clear that such matter
was necessarily in controversy in the suit and was decided in
it, otherwise such decree will not be conclusive of such mat-
ters.   *Corrothers* v. *Sargent*, 20 W. Va. 351.

According to this general rule, a decision upon a demur-
rer or issue of law, possesses the same conclusiveness as an
issue upon a plea or issue of fact.   In either case the matter
so decided is *res judicata* and absolutely conclusive between
the parties in any court whether of law or equity.   In examin-
ing this statute, however, it will be found that it to some ex-
tent restricts this rule as to the particular cases to which it
relates, and is to that extent in derrogation of the general law
and must therefore be confined strictly to the exceptions or
limitations contained in or imposed by it.   It excepts not
only matters as to which no plea is tendered but also those
as to which a plea is tendered but rejected because not offered
in time.   It likewise declares that :   " If an issue in fact is
joined on such plea," (that is, any plea which is not rejected
by reason of its not having been filed in time,) "and the same
be found against the defendant he shall be barred," &c.   This
provision is not entirely plain.   The words " issue in fact,"
are not necessarily the same as the phrase " issue of fact."
An issue in fact may be either an issue of law raised by a
demurrer or of fact raised by a plea ; but an issue of fact
can only be on a plea presenting an issue to be decided by a
jury or the court.   The meaning is doubtful, to say the least ;
and in that case it is the duty of courts to so interpret the
statute as not to affect the general law.   Its operation must
be confined to such alteration of the general law, and such
only, as are required by its express words or clearly shown
to be within the legislative intent.   But it may be argued that

this intent appears from the history of its enactment. It was taken from sec. 6, ch. 172, Code of Virginia, and is in the same language except that it omits the words: " If any such plea be rejected by the court as bad, or adjudged insufficient on demurrer, or," just preceding the words : " If an issue in fact," &c. in our statute. Thus by the Virginia statute it is plain that whether the issue was one of law on a demurrer or one of fact on a plea the party was barred of any relief in equity. It is the omission on the part of the Virginia statute, which makes the doubt in ours ; and unless such omission can be reasonably accounted for upon grounds which do not necessarily manifest a legislative intent to exclude from the bar to equitable relief matters decided upon demurrer to a plea, then such intent must be considered and the statute given effect accordingly, because we can not presume the omission was made without any object or purpose ; but if, on the other hand some good reason can be assigned for the omission without such effect then we are remitted to the statute as it stands and must construe it without reference to such omission.

It seems to me, that the Virginia statute would, in every instance where a plea was rejected as bad or held insufficient on demurrer, preclude the party from relief in equity, although it might clearly appear such plea was held bad or insufficient upon grounds not affecting the defence sought to be made by it. It might be rejected as bad or held insufficient for some merely technical error which, although good ground for disallowing it, might have no reference to the sufficiency of the matters contained and set forth in it as a defence. Under the Virginia statute all the matters set forth in such plea, although never passed upon in the court of law, would be concluded, and relief on account of such matters denied in equity. In such case the party would be denied all right to test the merits of his defence either in a court of law or of equity. I, therefore, think that the omission in our statute was intended simply to relieve the party from any such possible hardship ; but it was not intended to give a party whose defence had been fairly adjudicated upon the merits by a court of law, whether such adjudication was upon an issue of law raised by a demurrer to his plea or an issue of fact, the right to have such issue of law or fact

again heard and tried in a court of equity. In either case he has had the matters pleaded, tried upon "an issue, in fact, joined on such plea and the same found against him." This conclusion is strengthened by the provision which declares, that when the plea is rejected because not offered in time it shall not operate as a bar, thus indicating, that if the plea was rejected for any other cause the matter set forth in it could not be re-heard in equity. If this be so, it would follow that a plea held insufficient on demurrer would *a fortiori* be a bar in equity to the matters contained in it.

Applying these principles of law to the case at bar, we find that all the matters set forth in the *first, second* and *third* clauses of the plaintiffs' bill as hereinbefore given, are substantially the same matters contained in pleas No. 2 and No. 3, in the action at law exhibited with their bill. The matters in one of these pleas was adjudged against the plaintiffs, the appellants here, on an issue of law raised by demurrer and the facts averred in the other were tried by jury on an issue of fact and likewise found against them. If either of these findings, whether by the court on the demurrer or by the jury on the facts were erroneous, the proper remedy would have been by writ of error in that action and not by resort to a court of equity.

It thus appears upon the face of the bill that all of said matters in said three clauses set forth were fully and in fact adjudicated on their merits in the action at law. It not only appears that there was a full and apparently fair trial at law of all said matters, but that there were repeated trials, continued through a period of seven or eight years, at an expense which made the costs of the plaintiff, Vickers, alone exceed three times the amount of the debt recovered by the final judgment. To permit the appellants here, after all this, to come into a court of equity and have a trial *de novo* as a matter of right of these same matters, would be a reproach to our jurisprudence and a burlesque upon the law.

I do not deem it proper to occupy the space that it would require to compare in detail all the allegations of the bill as to these matters with the averments of the pleas, as the preceding statement can be referred to for such comparison. Nor do I deem it necessary to express any opinion as to the suf-

ficiency or insufficiency of such pleas, because if they set up no defence at law, the matters set forth in them could not be any ground for relief in equity.　And if they did set up such defence, the court and jury in the action at law found against the appellants and they are thereby concluded.

This leaves for consideration the *fourth, fifth* and *sixth* clauses or sub-divisions of the appellant's bill.　It is impossible to define or classify said fifth clause.　It contains three separate suggestions of defences : (1.) That Bias paid for more trees than he ever got ; (2.) that the consideration as to fifty-seven trees has already failed ; and (3.) that if Bias is *mulct* in damages for the trees he cut and removed the consideration will probably fail as to the balance by reason of said actions. It is scarcely necessary to notice these matters.　Bias was credited in the action at law for the $125.00 paid by him ; the next alleged defence is embraced in and concluded by the defence made at law ; and the probability of a failure of the consideration of the note mentioned in the third, is too remote and indefinite, even if the mere prospect of a failure of consideration at some future time could be a ground for equitable relief.

The fourth and sixth clauses of the bill relate to matters which were not referred to or litigated in any manner in the action at law, but they appear for the first time in this suit, and therefore rest upon a different ground from the matters hereinbefore considered.　If they entitle the plaintiffs to any relief it must be, as declared in said sec. 6 of the statute, "upon such ground as would entitle a party to relief against a judgment in other cases."　That is, it must be upon independent grounds of equitable jurisdiction.　The rule in such cases is stated and fully considered in the cases of *Shields* v. *McClung,* 6 W. Va. 80 ; *Morehead* v. *De Ford, Id.* 316 ; *Slack* v. *Wood,* 9 Gratt. 40 ; and *Hudson* v. *Kline, Id.* 379.

According to the settled law of this State it seems to me, that these allegations of the bill are insufficient to entitle the plaintiffs to any relief.　If the *fifth* clause is viewed in a light most favorable to the plaintiffs', it shows simply that they have obstructed and delayed the action at law not only until subsequent events, the bringing of the suits in the Federal court therein mentioned, developed the

defences set up by them, but that their delay and resistance was so protracted that the defences thus developed had become ineffectual by the bar of the statute of limitations.    It is shown that the contract was made in November, 1874, and the note became payable in March, 1875.    It is fair to presume that the contract contemplated the removal of the timber before or about the time the note became due, as it is not usual to pay before the goods are delivered.    The note became due March 1, 1875, and the action on it at law was not finally tried and determined until July, 1881, six years thereafter.    The allegations of the bill are that since the rendition of said judgment, certain actions at law and suit in equity have been brought, &c.    How long since the judgment is not stated, but the plaintiff's bill was not filed until November, 1882, nearly eight years after the note was given.    If, therefore, the plaintiff, Bias, had taken off his timber as contemplated by the contract no suit brought between six and eight years thereafter could interfere with his rights under the contract or make him liable for damages for timber taken off and paid for by him.    The statute of limitations would have barred any such claim before the action at law was decided. It is plain then that there is no merit in this portion of the plaintiff's bill.    This conclusion renders it unnecessary to consider the *sixth* clause of the bill.    For, even conceding the allegations to be sufficient to show the insolvency of Vickers, which they are not, (*Campbell* v. *Lynch*, 6 W. Va. 17,) still, as the plaintiffs have no title to relief against him, his solvency or insolvency is entirely unimportant and immaterial.    In every view of the bill, I am of opinion that it was insufficient and that the circuit court properly dissolved the injunction and dismissed the cause.    The decree must therefore be affirmed.

AFFIRMED.