# CHARLESTON.

LOCKHEAD *v.* BERKELEY SPRINGS WATERWORKS & IMPROVE-
MENT CO. *et al.*

| 40 | 553 |
|---|---|
| 44 | 403 |
| 40 | 553 |
| 61 | 524 |

Submitted January 31, 1895—Decided April 13, 1895.

1. PLEADING—DEMURRER—EXHIBITS.
    In passing upon a demurrer to a bill with which written docu-
    ments are exhibited, as parts thereof, the court is not bound to
    accept as true and correct the allegations contained in the bill
    as to what such documents prove, or what is their effect in law,
    but may look to and go by the documents themselves.

2. MECHANIC'S LIEN—OATH TO MECHANIC'S ACCOUNT.
    Chapter 75 of the Code creates the mechanic's lien in certain
    cases, on certain conditions; and section 4 of such chapter, among
    other things, provides that such account, to be effectually filed
    for record as a lien, must be sworn to by the person claiming the
    lien, or by some person on his behalf. Such oath is an element
    essential to the creation of the lien, and, to be effectual, must be
    in writing, as a part in some way, of the paper writing filed for
    record.

3. MECHANIC'S LIEN—AUTHENTICATION OF OFFICIAL SIGNATURE.
    If such affidavit be made before any officer of another state or
    country, such as the District of Columbia, it is not duly authenti-
    cated for record until it is subscribed by such officer, and there
    be annexed thereto the certificate of the clerk or other officer of
    a court of record of such state or country, under an official seal,
    verifying the genuineness of the signature of the first mentioned
    officer, and his authority to administer an oath. Section 31, chap-
    ter 130, of the Code. A case in which these rules are discussed
    and applied.

FLICK & WESTENHAVER and HENRY R. ELLIOTT for appel-
lant, cited Code, c. 130, s. 31; Id. c. 73, s. 3; Id. c. 73, s. 5; Id.
c. 13, s. 4; Id. c. 75, ss. 4, 5; 2 Min. Inst. 864; 8 Gratt. 12; 6
Gratt. 660; Dev. Deeds, § 500; Rev. Stat. D. C. § 916; Rev.
Stat. U. S. c. 115, § 2; 1 W. Va. 16; 22 W. Va. 667; 32 W.
Va. 174; Dev. Deeds, §§ 473-4-5; 14 Ill. 254; 12 Bush. 408; 1
Am. & Eng. Enc. Law 1020; Dev. Deeds 502; 13 Peters 17; 7
Watts. 334; 1 Dev. & Bat. Eq. 7; 8 Greenl. Ev. § 383; Danl.

Ch. Prac. p. 892; 6 Veasey 823; 13 W. R. 128; 8 East 364; 1 Peters 368; 26 W. Va. 807; 7 W. Va. 569.

W. H. TRAVERS for appellee, cited Code, c. 50, s. 4; Id. c. 73, s. 3; Id. c. 75, ss. 2, 4, 7; Id. c. 130, s. 31; Code (Va.) c. 176, s. 27; 115 U. S. 122; 7 W. Va. 467; Id 415; 13 Peters 17; 32 Am. Dec. 765; Phillips Mechs. Liens § 366.

HOLT, PRESIDENT:

The bill in this case was filed in the Circuit Court of Morgan county for the enforcement of a mechanic's lien, under chapter 75 of the Code. There was a demurrer to the bill, which was sustained by the court; and the plaintiff expressing no desire to amend, the bill was dismissed, and this appeal has been allowed.

The decree sustaining the demurrer is the one error complained of. The main ground of demurrer was that the mechanic's lien had not been sworn to, and the oath certified, as required by statute. The bill alleges that the plaintiff made the affidavit required by statute, and on the 29th day of June, 1894, he had the same admitted to record in the clerk's office of the County Court of Morgan county. A copy of the mechanic's lien, with the affidavit therein, is filed as an exhibit with the bill.

Under the provision of section 4, chapter 75, of the Code, the party claiming a lien "shall within sixty days after he ceases to labor on or furnish material or machinery for such building or other structure, file with the clerk of the county court of the county, in which the same is situated, a just and true account of the amount due him, after allowing all credits, together with a description of the property intended to be covered by the lien, sufficiently accurate for identification, with the name of the owner or owners of the property, if known, which account shall be sworn to by the person claiming the lien, or some person in his behalf."

The affidavit is as follows: "District of Columbia, City of Washington—ss.,"—and signed, "James Lockhead," and concludes with the following certificate: "Subscribed and sworn to before me this 28th day of June, A. D. 1894. J. R.

Young, Clerk Supreme Court, D. C. (with the seal of the Supreme Court of the District of Columbia) by M. A. Chancey, Assistant Clerk."

The case in hand has been argued by counsel as depending upon the true construction of section 31 of chapter 130 of the Code, regulating certain matters of evidence, which is as follows: "In any case in which an oath might be administered by, or an affidavit made before, a justice, the same may be done by or before a county commissioner, notary public, or a commissioner appointed by the governor, or by a court or the clerk thereof; or in case of a survey directed by a court in a case therein pending, by or before the surveyor directed to execute said order of survey. An affidavit may also be made before any officer of another state or country authorized by its law to administer an oath, and shall be deemed duly authenticated if it be subscribed by such officer, and there be annexed to it a certificate of the clerk or other officer of a court of record of such state or country, under an official seal, verifying the genuineness of the signature of the first mentioned officer, and his authority to administer an oath." It must be read in connection with section 4 of chapter 50, which reads as follows: "Where any oath may lawfully be administered, or affidavit or deposition taken within any county, it may be done by a justice therein, unless otherwise expressly provided by law."

1. It will be seen that section 31 of chapter 130 seems to be divided into two clauses, providing for two classes of cases. This law had its inception as section 3 of chapter 65 of the act of March 6, 1841 (see Acts 1840-41, p. 76) which reads as follows: "That in all cases when by law the affidavit of any person residing in another state of the United States or any district or territory thereof, or in any foreign country is required or may be necessary in any judicial proceeding in this state, the same shall be deemed duly and properly authenticated if subscribed and taken before some officer of such state, district or territory, or foreign country, authorized by the laws thereof to administer an oath or affirmation, and shall have annexed thereto a certificate of the clerk or other proper officer of a court of record of such

state, district or territory or foreign country under the seal of such court, if there be a seal, or of any of the officers or agents before mentioned, verifying the genuineness of the signature of said officer, the existence of such office and the authority of such officer to administer an oath or affirmation." The officers and agents before mentioned in the act are "all American ministers plenipotentiary, charges d'affaires, consuls-general, consuls, vice-consuls, and commercial agents, duly appointed and recognized in any foreign country." Chapter 57 of the act of 14th February, 1844 (see Acts 1843-44, p. 52) authorized the governor to appoint and commission in each of the other states, in the territories, and in the District of Columbia, one or more commissioners, with authority to take acknowledgments and proof of deeds, *etc.;* and section three of the chapter provides as follows: "Every commissioner appointed by this act shall have full power and authority to administer all lawful oaths and affirmations, and his certificate of the same shall have the same effect in the courts of the commonwealth as the certificates of judges, justices and commissioners in this commonwealth." The act of April 4, 1848 (Acts 1847-48, p. 61) provided that notaries public should have the same right and power to administer oaths in all cases which justices of the peace now have and exercise, and their certificates and seals shall be entitled to the same faith and credit as those of justices of the peace. Then came the revisal of the Code of 1849. See report of Revisers of 1849 (page 866). Down to this time the modes of authentication of oaths by domestic and foreign and *quasi* foreign officers were separate and distinct. The latter clause, as it now stands, mentioned the District, and, putting it in the same class with foreign countries proper, required an additional certificate, verifying the genuineness of the signature of the foreign officer, taking and certifying the oath, the existence of such office, and the authority of such officer to administer an oath or affirmation. The revisers of 1849 put the section in its present form, including the methods of authentication by state and county officers in the first clause, and the method of authentication by foreign and *quasi* foreign officers in the last or

second clause. See section 26, chapter 176, p. 665, Code 1849. It was amended and re-enacted by the act of December 21, 1859 (see Acts 1859-60, p. 139) so as to read as we find it in the edition of 1860 of the Code of 1849 (see Code 1860, s. 27, c. 176, p. 726) which, for the purpose now in hand, is the same as we now have it in this state by section 31, chapter 130, Code 1891, p. 827.

2. Not only does the history of the enactment in question tend to show that the first clause of section 31 of chapter 130 is confined to authentication of oaths taken and certified by state and county officers, and that the second clause is confined to the mode of authentication of oaths taken and certified by officers of all other states and countries including the District of Columbia, but I think such is the fair reading and meaning of the section, by its own language and terms. For we see that all the officers mentioned in the first clause are unequivocally state or county officers, unless it be the notary public, and the court or the clerk thereof; and as to those there can be no doubt, when we consider the history of the enactment, and its present apparent classification of domestic and foreign officers, but especially when we consider that the extent of the authority of the justice is made the measure of the authority of all the others named in this first class, for his authority, we see by section 4 of chapter 50, is limited to his state and county, and so we must regard the notaries public and courts and clerks mentioned as being state and county officers and tribunals; and the commissioner appointed by the governor for another state is, of course, an officer of this state.

3. The reason and purpose of the law, as founded upon the state of facts leading to the enactment of the requirement of an additional and supplementary certificate of authentication in the latter class of cases which does not exist in the other, also tend to justify the same construction. Heretofore the general rule prevailed that the law, written or unwritten, of a foreign state or country, had to be proved as a fact; but now, by section 4 of chapter 13 of the Code, the courts of this state shall take judicial notice of the laws of another state and country, whenever material, and

would be thus informed that a certain class of officers are authorized by the laws of the District of Columbia to administer an oath. But they would still need to be certified in some way that the officer in question belonged to such class, and that his signature was genuine, so that some of the reasons that occasioned the law still exist. And, even if that could have any bearing, no part of the certificate has been dispensed with, but the law-maker has seen fit to preserve it intact, notwithstanding the enactment of section 4 of chapter 13 of the Code of 1868, as borrowed from the New York Code of Procedure. *Parker* v. *Clark* (1874) 7 W. Va. 467, and *Dickinson* v. *Railroad Co., Id.* 390, are the only cases cited, and the only ones I have been able to find in our Reports, bearing in any degree upon this point. There the authority of the clerk of the district court of the United States for the district of West Virginia to administer an oath under the first clause of section 31 of chapter 130 (section 27 of chapter 176, Ed. 1860) of the Code of Virginia is expressly put upon the ground that he was the clerk of a court holding and exercising jurisdiction within the limits of this state. These courts are, in some respects enumerated, recognized as courts of the state and are therefore within the meaning of the term "by a court or the clerk of any court," as used in the first clause of section 27 of chapter 176 of the Code (Ed. 1860) of Virginia. And in *Dickinson* v. *Railroad Co.*, 7 W. Va. 390, such United States district court held within this state is held to be a local court of the state, within the meaning of section 5 of chapter 130 of the Code of 1868, and not within the meaning of section 19 of chapter 130 of such Code. The clerk in this case was considered an officer of a domestic federal court, and therefore within the reason and meaning of the first clause of the section; and for that reason there was not needed to be annexed thereto any certificate under an official seal of a court of record, verifying the genuineness of the signature of the first mentioned officer, and his authority to administer an oath, as would have been needed had such clerk been held to be an officer of another state or country, authorized by its laws to administer an oath. And the terms in the latter clause,

"any officer of another state or country," are used in contradistincton to the officers mentioned in the first clause, and therefore import that such officers, so mentioned by name, are domestic officers of the state and countries, and further are, in effect, equivalent to saying all officers of another state or country, authorized by its laws to administer an oath, must have the genuineness of their signatures, and their authority to administer an oath by the laws of their respective states or countries, verified by the additional certificate annexed thereto of the clerk or other officer of a court of record of such state or country, under an official seal.

But the bill alleges that the plaintiff made the affidavit required by statute. Must this allegation be taken to be true on demurrer, when the copy of the paper filed and recorded as his mechanic's lien is exhibited as a part of his bill, and may show such allegation not to be true? Such documentary evidence exhibited with and made part of the bill must at some time be read, and its legal effect, and the fact it proves, be determined by the court. The modern rule is that this may be done in passing upon the demurrer, and the court is not bound to accept as true for such purpose the allegation contained in the bill as to what fact the paper proves, or what is its effect in law. See 1 Beach, Mod. Eq. Prac. § 229; *Interstate Land Co.* v. *Maxwell Land-Grant Co.,* 139 U. S. 569 (11 Sup. Ct. 656); *Dillon* v. *Barnard,* 21 Wall. 430; *Lea* v. *Robeson,* 12 Gray 280.

The court will, on demurrer, construe the instrument for the pleader. See *North* v. *Kizer,* 72 Ill. 172. In our practice it is no longer an open question. *Bias* v. *Vickers,* 27 W. Va. 456. This leads to no inconvenience, as the court may, in one or more ways, when there is proper occasion for it, hold the ultimate decision of the demurrer in suspense until a further or the final hearing. See 1 Barb Ch. Prac. 345; 4 Minor Inst. 1146; *Pryor* v. *Adams,* 1 Call 391. For collection of authorities, and discussion of general subject, see *Kester* v. *Lyon* (20 S. E. Rep. 934), 40 W. Va. 161.

Another point made by counsel for appellant is: "Conceding for the sake of argument, that the certificate annex-

ed to the affidavit to the account filed in the clerk's office
does not contain all that section 31 of chapter 130 requires,
yet it does show that the affidavit was made before an officer
who the court judicially knows has authority to administer
an oath, yet the fact of such authority, and the genuineness
of his signature, may be proved by parol or otherwise by
evidence *aliunde* at the hearing of the cause.   They say that
the paper (the copy of the mechanic's lien account) filed as
an exhibit with the bill purports, upon its face, to have been
sworn to by the plaintiff, the lienor; the bill alleges that he
made up a just and true account of the amount due to him
from said company, with a description of the property in-
tended to be covered by the lien, made the affidavit thereto
required by the statute, and on the 29th day of June, 1894,
filed, and had the same admitted to record; that this was
sufficient to require the overruling of the demurrer; that
the objections to the affidavit, even if well founded, go, not
to the substance of the act, but merely to the proof furnish-
ed; that it had been sworn to—in other words, the authen-
tication of the genuineness of the clerk's, or of the assist-
ant clerk's signature, and his authority to administer an
oath, is defective.   To authenticate a writing is to perform
certain acts upon it for the purpose of rendering it admissi-
ble in evidence as being what it purports to be, without
proof by witnesses that it is such.   Authentication is then
merely a convenient method of furnishing proof of certain
things.   When, therefore, the section in question says an
affidavit will be sufficiently authenticated in a certain form,
verifying the genuineness of the signature and the author-
ity of the person administering the oath, it simply means
this is one method of making the affidavit admissible in the
evidence without other proof of such genuineness and such
authority.   It does not purport to be the only, or an exclu-
sive method.   Nor does it follow that if the oath was in fact
lawfully administered, if the affidavit was in fact duly made,
it shall be of no effect because the officer has neglected to
avail himself of the most convenient method of making it
admissible in evidence without other proof.   Consequently,
parol evidence might be introduced at the hearing both as

to the genuineness of the signature of the clerk, or the assistant clerk, and of his authority to administer an oath. Such authority the court knew, by having, under our statute, judicial knowledge thereof, and the genuineness of the signature it also sufficiently knew, by virtue of taking as true on the demurrer the allegation of the bill to the effect that the mechanic's lien had been duly sworn to. The case was, therefore, when heard below, completely rounded out on all sides." And the cases of *Van Ness* v. *Bank*, 13 Pet. 17, and *Bennett* v. *Paine*, 7 Watts 334, are cited as illustrations of the doctrine applied in analogous cases and *Omealy* v. *Newell* (1807) 8 East. 364, as giving the common-law method of supplementary proof or verification in such cases. I do not think these cases apply, nor do I regard this view of the law of this case as tenable, either by the language of the statute, the reason of its enactment, or upon the authorities, as far as I have been able to examine them. Here it is conceded that the statute has named a method. Is it the only method of authentication, or can it be proved in some other way at the hearing? Such contention rests, I think, upon a misconception of the purpose of the authentication, the persons it is intended to satisfy, and the reason of the selection of the method which requires it to appear written upon the face of the claim authorized to be made a lien on being admitted to record. It is intended as a notice of the lien—a creature of the statute—to all whom it may concern. At this important stage the court, with its widespread judicial knowledge or notice of the facts of foreign law, has no concern in the matter. It is a notice, and is not intended by the lawmaker to answer the purposes of deciding subsequent demurrers. But the party whom it does concern is not required to take judicial notice of the law of the District of Columbia saying who may administer an oath, but of the statute creating the lien, and there he finds prescribed a method. So that, unfortunately for the argument, the judicial notice of foreign laws, and the concern in the validity of the lien, play somewhat at cross purposes; and for his purpose, when their coming together is important, they are not together, and when they do so come together, as to him,.

by the aid of the judicial notice of foreign laws as facts, his misplaced confidence in the record is past recall. For the party whom it may concern, to whom the statute requires the notice to be given wishes to know now the present actual fact of lien or no lien, as already accomplished; and the law-maker intending to cut off and guard against all chance of secret liens in such a case, required such present, actual fact to be a written one, open then and there to his observation and inspection, and to be definite and particular in the creation of a new and elsewise dangerous lien—a peculiarly dangerous lien—prescribed a method of authentication which he was to look for, and must find admitted to record, if it exists at all, and he is required to look there, and nowhere else, for all the essential, determining factors of such ascertainment. "For here real estate in the possession of his debtor, actual or intended, is to be charged with what would otherwise be a secret lien." Phil. Mech. Liens (3d Ed.) §§ 63, 337. Surely, the law-maker did not intend a matter made essential to the existence of the lien to be left at large in any such loose and undetermined attitude that it might stand or fall by words not yet written or spoken; introduced by statutory judicial notice on the hearing of some subsequent demurrer, that there was still another method of authentication, by parol or otherwise, beset in some cases, it might be, with the temptation to supply from uncertain memory, after the event, what was made known to be wanting. This would subvert the purpose and reason of requiring it to be recorded, and the hardship of the rare instance would weigh but little, when put in the balance against such general inconvenience. So the books hold, so far as I have been able to examine them, and, as we have already seen, the letter of the statute is in the very teeth of any such construction.

Where the statute prescribes no method of verification of the signature of the officer before whom the affidavit is made, or of his authority to administer the oath, or if, when a method is mentioned, it does not appear to be restrictive or exclusive, the common-law mode of proof must be in the one case may be in the other resorted to. The common-

law practice was to make affidavit before any officer of a foreign country authorized by its laws to administer the oath in question, and then his signature and authority might at any time be verified by the affidavit of some one cognizant of the fact, made within the realm. *Omealy* v. *Newell*, 8 East. 364.

In the case of *Van Ness* v. *Bank* (1839) 13 Pet. 17, the court followed the case of *Connelly* v. *Bowie* (1823) 6 Har. & J. 141, in holding that where the certificate of acknowledgment of a deed did not state that the persons by whom it was taken were justices of the peace, and there was no evidence in the record to prove their official character, the certificate would be inadmissible, but went further, and held expressly, that evidence *aliunde* was admissible to supply the omission in the certificate indorsed on the deed. In the case of *Bennett* v. *Paine* (1838) 7 Watts 334, the certificate of acknowledgment contained no assertion of magisterial character. It was not affirmative of either office or place, and the court held that proof of the existence of the magisterial character could be supplied by evidence *aliunde*, and by the common-law methods, as there was no substitution of statutory for the common-law method of proof. This is based upon the general doctrine that where the statute is silent the common-law speaks, but the general rule is equally well settled—that where the statute comes in the common-law is, to that extent, displaced.

Here the statute prescribes a method of giving notice to all whom it may concern, by requiring it to be in writing, and made matter of record, so that the lien created may not be secret, and the inherent nature of the transaction necessarily implies that such method is intended to be exclusive.

Where a statute declares that the notice to create a lien shall be verified before filing, it is essential to the creation of the lien that it should be sworn to in the manner prescribed. The want of verification, or of sufficient verification, is a defect which goes to the whole claim, and can not be amended. "A claim for a mechanic's lien, when filed, should have been verified; and it should appear upon its face to have been verified, before it can be made the basis

of a proceeding to enforce the claim based upon it. If any special form of verification is prescribed, it must be followed." See Phil. Mech. Liens (3d Ed.) §§ 366, 366a, citing *Hallagan* v. *Herbert*, 2 Daly 253; *Lindsay* v. *Huth*, 74 Mich. 712 (42 N. W. Rep. 358). In the latter case the notice of lien filed had no verification of any kind. The verification of the demand contemplated by the statute is an oath or affirmation taken and administered by and before an officer having authority by law to administer and certify oaths and affirmations. 2 Jones, Liens § 1451. A verification of the claim substantially as required by statute is essential to its validity. *Id.* See discussion of the subject in *Chandler* v. *Hanna* (1882) 73 Ala. 390; *Blowpipe Co.* v. *Spencer* (decided at this term) 40 W. Va. — (21 S. E. Rep. 769).

Our opinion is that in such case what is essential to create the lien, and give notice thereof to the world at large of its being filed for record as such lien, does not exist, efficiently to that end, unless it appears on the face of the paper; that the verification of the genuineness of the signature of the foreign officer before whom the affidavit was made, and his authority to administer an oath, does not in this case so appear by such certificate of the clerk or other officer of a court of record of such state or country, as section 31 of chapter 130 of the Code requires; that the decree sustaining the demurrer was therefore right; and the plaintiff declining to amend, but electing to stand by his bill as he made it, there was nothing the court could do, but dismiss it as on final hearing. Decree affirmed.