## In re RICHARDS.

### (Circuit Court of Appeals, Seventh Circuit. October 4, 1899.)

### No. 611.

1. BANKRUPTCY—JURISDICTION OF CIRCUIT COURT OF APPEALS.

Upon an appeal to the circuit court of appeals from the district court in bankruptcy, under Bankr. Act 1898, § 25, the facts, as well as the law, are before the appellate court for review. But the petition for review, under section 24b, which authorizes the circuit courts of appeals to "superintend and revise in matter of law the proceedings of the several inferior courts of bankruptcy," is intended as a summary mode of reviewing any alleged erroneous decision upon a question of law, and does not contemplate a review of the facts.

2. SAME—REQUISITES OF PETITION FOR REVIEW.

A petition to the circuit court of appeals for a review of a decision of the district court sitting in bankruptcy should state specifically the question of law which was involved and ruled upon by the district court, and should be accompanied by a certified copy of so much of the record as will exhibit the manner in which the question arose, and its determination; and the question of law so presented is the only question which will be decided by the appellate court.

3. SAME—CONSTRUCTION OF STATUTE—LIENS.

The two subdivisions "c" and "f" of section 67 of the bankruptcy act, relating to the effect of an adjudication of bankruptcy upon existing liens upon the property of the bankrupt acquired through legal proceedings, are antagonistic, and irreconcilable; and therefore, in any case of conflict between them, the former must give way, and the latter prevail.

4. SAME—ACT OF DEBTOR—KNOWLEDGE OF CREDITOR.

All liens obtained through legal proceedings against an insolvent debtor within four months prior to the filing of a petition in bankruptcy by or against him are annulled by his adjudication as a bankrupt, irrespective of the question whether the debtor suffered or permitted the lien to be

obtained, and irrespective of any knowledge by the creditor of the debtor's insolvency.

**5. SAME—VOLUNTARY AND INVOLUNTARY CASES.**

Bankr. Act 1898, § 67f, providing that liens obtained through legal proceedings against an insolvent debtor "at any time within four months prior to the filing of a petition in bankruptcy against him shall be deemed null and void in case he is adjudged a bankrupt," is to be construed as applying to voluntary as well as involuntary cases, inasmuch as section 1, subd. 1, declares that "'a person against whom a petition has been filed' shall include a person who has filed a voluntary petition."

**6. SAME—ENTRY OF JUDGMENT ON JUDGMENT NOTE.**

Where a creditor holding a judgment note of his debtor enters judgment thereon within four months prior to the filing of the debtor's voluntary petition in bankruptcy, the latter being insolvent, the lien of the judgment is annulled by the adjudication in bankruptcy, notwithstanding the fact that the giving of the note itself ten months before the bankruptcy proceedings could not have been set up against the debtor as an act of bankruptcy.

Petition for Review of a Decision of the District Court of the United States for the Western District of Wisconsin, in Bankruptcy.

On the 19th of June, 1899, John Richards, Thomas Caygill, and Samuel Treloar presented their petition to this court representing that they were judgment and execution creditors of the bankrupt by virtue of a judgment entered upon a judgment note given by the bankrupt to the petitioners on the 11th day of April, 1898, judgment whereon was rendered on the 9th day of February, 1899, in the circuit court of the state of Wisconsin for the county of Iowa, and under an execution upon such judgment levied on that day upon the goods of the bankrupt. On February 11, 1899, the bankrupt filed his petition in bankruptcy in the district court of the United States for the Western district of Wisconsin, and was upon that day adjudged a bankrupt. On the same day the district court by its order restrained the sheriff from proceeding further under such execution, and from selling the goods of the bankrupt. Afterwards, by stipulation between the judgment creditors and the trustee of the bankrupt, the property was sold and the proceeds covered into the registry of the district court, without prejudice to the rights of the judgment creditors, and subject to their lien, if any, upon the goods. They thereupon petitioned the district court for the payment of their judgment, and the trustee answered thereto, which petition and answer are annexed to the petition to this court. Thereafter the matter came on to be heard upon such petition and answer, and upon testimony taken thereunder; and at some time thereafter—but when does not appear by the petition or by the record—the district court filed its opinion denying the prayer of the petition of the judgment creditors. In re Richards, 95 Fed. 258. The record does not exhibit any order made in pursuance of this opinion, nor does the petition to this court state such order. The petition alleges that the decision of the district court is erroneous and should be corrected, and prays that the trustee may be summoned to answer the petition, and to comply with such order and decree as this court may make in the premises. The facts, as stated by the district judge in his opinion with respect to the origin and the nature of the claim of the judgment creditors, are as follows: Richard T. Richards, the bankrupt, in the spring of the year 1897 was elected treasurer of the town of Linden, in the county of Iowa, and state of Wisconsin. John Richards and Thomas Caygill, two of the petitioning creditors, became sureties upon his official bond. At the end of his term, in April, 1898, Richard T. Richards was found to be a defaulter to the amount of $1,350 in respect of the town tax. He was unable to pay that amount, and procured his bondsmen and the third petitioner, Samuel Treloar, to pay the amount due the town, and he gave them a judgment note, dated April 11, 1898, payable one day after date, for $1,400, and certain mortgages upon real estate, and also transferred to them as collateral one-half of his book accounts, and a separate mortgage on his homestead was given to Samuel Treloar, who was not a surety upon the bond, but who in fact paid in cash $450, the one-third part of

the amount due to the town. The payees in this judgment note on February 9, 1899, entered judgment for the amount due, issued execution thereon, and thereunder the sheriff levied upon the stock of goods belonging to the bankrupt. Five days after the entry of judgment, and on February 14, 1899, Richard T. Richards filed his petition in bankruptcy, and was duly adjudged a bankrupt. At the time of the execution of the note, as well as at the time of entering the judgment, Richard T. Richards was insolvent, and was so known to be by the petitioners, the judgment creditors, and the judgment was entered and levy made for the purpose of gaining a preference over other creditors.

A. L. Sanborn, for petitioner.

H. L. Butler, for respondent.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

JENKINS, Circuit Judge, upon the foregoing statement of the case, delivered the opinion of the court.

We might properly dismiss this petition without consideration of the merits, both upon the ground that no order appears to have been entered by the district court determining the prayer of the petition, and upon the further ground that the practice adopted by the petitioners in seeking a review of the decision below is not conformable to law. We pointed out in Re Rouse, Hazard & Co., 63 U. S. App. 570, 33 C. C. A. 356, and 91 Fed. 96, that the bankrupt act authorized an appeal of controversies arising in bankrupt proceedings, and also invested the circuit courts of appeals with the power to superintend and revise in matter of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction. In the case of an appeal the facts as well as the law are before this court for review. In the case of original petition this court has authority to review merely a matter of law arising in the course of the proceeding below. The latter is intended as a summary mode of reviewing any supposed erroneous holding upon a question of law, and does not contemplate a review of the facts. A similar conclusion was reached by the court of appeals of the Fifth circuit in Re Purvine, 96 Fed. 192. The petition in such case should state specifically the question of law which was involved and was ruled upon by the court below, and should be accompanied by a certified copy of so much of the record as will exhibit the manner in which the question arose, and its determination. Such question of law, so presented, is the question and the only question that can properly be ruled upon by this court upon an original petition. The petition here states no such question, but charges that the decision below, upon the facts as well as upon the law, is erroneous. We are careful to point out the defects of practice in this instance because we think a proper exercise of our jurisdiction under the bankrupt act requires a strict adherence to the requirements of the law. But the question of practice was not suggested at the hearing by the opposing counsel, and the question of law involved is important and was fully argued at the bar, and should have an early solution. We have therefore concluded to overlook the question of practice, and to determine the question of law presented. We do not, however, review the evidence, but take the facts stated in the opinion of the court below as the established facts.

The question, therefore, for determination, is whether the lien of a judgment obtained against a person who is insolvent upon a judgment note within four months prior to the filing of the voluntary petition in bankruptcy is protected by the bankrupt act. 30 Stat. 544, c. 541. Section 67 of the act deals with the subject of those liens which shall be preserved and enforced and those which shall be discarded. The subdivisions of that section which we need to consider are as follows:

"(c) A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this act; or if the dissolution of such lien would mitigate against the best interests of the estate of such person the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the holder of such lien and empowered to perfect and enforce the same in his name as trustee with like force and effect as such holder might have done had not bankruptcy proceedings intervened."

"(f) That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: provided, that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

It is quite clear that the transaction of giving the judgment note and mortgage and collateral security is not avoided by subdivision "c," for the reason that the securities were so given more than four months before bankruptcy; but whether the lien obtained by entry of judgment upon the judgment note holds is quite a different question. The judgment note did not create a lien. Its efficacy and value as security consisted in this: that by virtue of the irrevocable power of attorney it was possible for the creditor to enter judgment at will at the maturity of the note, without consent of or participation by the debtor, and in despite of his opposition. Therein inhered its potency and its superior value. It did not create a lien upon the property of the debtor, but enabled the creditor to obtain such lien by immediate judgment, at his will. We must, therefore, inquire whether the lien of a judgment under a judgment note acquired by legal proceedings against a person who is insolvent within four months prior to the filing of a petition in bankruptcy is saved or avoided by the bankrupt act. If the case falls within subdivision

"c," under the rule in Clark v. Iselin, 21 Wall. 360, construing a somewhat similar provision under the former bankrupt act, it might be possible to uphold the claims of the petitioners, although the provisos of that section are stated in the disjunctive, and it may be difficult to give meaning and sense to them unless they are read conjunctively. But subdivision "f" declares that all liens obtained through legal proceedings against a person who is insolvent within four months prior to the filing of the petition shall be void in case he is adjudged a bankrupt. These two subdivisions, "c" and "f," in our judgment, are plainly antagonistic and irreconcilable. The former saves a lien obtained through legal proceedings begun within four months unless it was obtained and permitted while the debtor was insolvent, or the creditor had reasonable cause to believe such insolvency, or the lien was sought and permitted in fraud of the provisions of the act. The question of the pecuniary condition of the debtor and knowledge upon the part of the creditor are influential in determining the validity of the lien so obtained. But subdivision "f" is broader in its scope, and avoids all liens obtained through legal proceedings within the time stated against a person who is insolvent, within the meaning of the subdivision, irrespective of knowledge on the part of the creditor of the fact of insolvency, and irrespective of the question whether the obtaining of the lien was in any way suffered and permitted by the debtor. It avoids all liens obtained through legal proceedings against a person who is insolvent within four months before the filing of the petition. We are unable to reconcile these provisions. They are broadly and clearly in antagonism. It is not a question, therefore, how they may be reconciled, for that is impossible. The question is, which shall prevail? The rule in such cases is stated by Puffendorf (Potter, Dwar. St. [Ed. 1871] p. 132):

"When we meet with a seeming repugnancy in the terms, conjectures are necessary to work out the genuine sense, by reconciling it, if it is possible, to those terms that seem to be repugnant. But, if there be a clear, evident repugnancy, the latter vacates the former. This rule applies to the making of laws, wills, and contracts."

Under this rule, subdivision "f" must control, and we find confirmation of the justice of this rule in the history of this act. Two bills in bankruptcy were presented to congress; one to the senate and one to the house of representatives. They were broadly divergent in spirit. One was supposed to be largely in the interest of the creditor; the other largely in the interest of the debtor. Subdivision "c" of section 67 was contained in the house bill; subdivision "f" was contained in the senate bill. The two houses were at disagreement respecting these bills, and the matter was referred to a conference committee of the two houses near the end of the session, resulting in the incorporation into the house bill of subdivision "f" which was in the senate bill. Mr. Henderson, in presenting the conference report to the house, stated that subdivision "f" was incorporated into the bill to strengthen the bill. 31 Congressional Record, pt. 7, p. 6428, June 28, 1898. The confusion results from the omission of the conference committee to modify the language of subdivision "c," or to strike it out altogether; but the passage of the bill by the house

with subdivision "f" contained in it, after this report of the conference committee, must be taken as an indication of the will of the lawmaking power that the provisions of subdivision "f" shall prevail, notwithstanding anything antagonistic to them previously found in the act. We are of opinion, therefore, under the rule stated, corroborated and justified by the action of congress, that the provisions of subdivision "f" must prevail over those of subdivision "c," and that all liens obtained through legal proceedings within the time stated against a person who is insolvent, and irrespective of any sufferance or permission thereof by the debtor and of any knowledge by the creditor of the debtor's insolvency, are avoided if that subdivision can be held to apply to voluntary proceedings in bankruptcy, and if another objection, hereinafter considered, is unavailing.

It is insisted, however, that subdivision "f" of that section has no application to cases of voluntary bankruptcy. But to ascertain the purpose of the lawgiver we must look within the four corners of the act to gather the real purpose and intent of the law, having regard to the mischief sought to be remedied. It is difficult to see why the remedy for the supposed evil should be limited to a case of involuntary bankruptcy, for it would then be in the power of the debtor to prefer one creditor, and, by filing a voluntary petition, anticipate and prevent an attack by other creditors through involuntary proceedings. The expression "filing of a petition against him" is also used in the last clause of subdivision "e," which provides that "and all conveyances, transfers or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him and while insolvent which are held null and void as against the creditors of such debtor by the laws of the state, territory or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt." Can it be presumed that congress designed to avoid transactions by the debtor declared by the law of the domicile to be in fraud of creditors only when a petition is filed against the debtor, and to uphold and sustain such fraudulent transaction in case of a voluntary petition? The manifest purpose of the law, aside from the relief of the debtor by discharge from his debts, is to secure an equal distribution of his property among all his creditors, and to avoid all transactions within the specified limitation of time which are in fraud of creditors. Did congress design to establish a race of diligence between debtor and creditor, by which the former could anticipate the action of the latter, and by voluntary bankruptcy legalize fraudulent transactions which the act would avoid upon involuntary proceedings in bankruptcy? We could only assent to such a proposition when compelled by clear and precise language in the act. By the first section of the act, which was in the house bill when it went to the conference committee, and which house bill was substituted for the senate bill, and was reported with amendments, certain definitions are stated to control and explain language subsequently used in the act. It is there provided as fol-·

lows: "The words and phrases used in this act and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows: '(1) A person against whom a petition has been filed,' shall include a person who has filed a voluntary petition." The exact expression, "a person against whom a petition has been filed," occurs but once in the whole act and that in section 3, subd. "d"; but it can scarcely be supposed that a definition would be given in one section of an expression but once used in the act, since it would have been easy, by using in the subsequent section the words "by or against," to have avoided the need of definition, and particularly when the section in which the expression is found has reference to what could occur only in a case of involuntary bankruptcy. And so, also, with respect to section 11 of the act, which provides for a stay of suits pending against an insolvent at the time of filing a petition against him, and for 12 months after an adjudication. The language of the section is limited to involuntary proceedings, the manifest intention being that, pending the bankruptcy proceedings, the debtor, with respect to debts which may be discharged in bankruptcy, shall not be annoyed by legal proceedings. The reason for such provision is equally applicable to voluntary as to involuntary proceedings in bankruptcy, and the section is given its full effect by the application to it of the section upon definitions. We are of opinion that the intent of congress in stating the definition was to declare that the provisions of the act respecting proceedings against debtors should be applicable to and comprehend all cases where a voluntary petition is filed where such provisions are pertinent. In this way only, as it seems to us, can any harmonious design be evolved from the act; and it is the duty of the court, as we conceive it, to construe the act to work out, if possible, a consistent whole. We are aware that the contrary opinion was expressed in three cases: In re De Lue, 91 Fed. 510; In re Easley, 93 Fed. 419; In re O'Connor, 95 Fed. 943. In the first two of these cases the question would seem to have been ruled without reference to or consideration of the section upon definitions, and without regard to the serious wrong which would flow from the construction adopted. In the last case the provisions of section 1 are considered, but held not to apply. The learned judge concedes that the grounds upon which he excludes such application are extremely technical. They do not approve themselves to our judgment, and, as we have pointed out, would render valid, under subdivision "e," fraudulent acts of the debtor if he should anticipate the action of creditors by first filing his petition.

We are also unable to uphold the contention that the lien of this judgment must be upheld because the acts which led up to and procured it occurred more than four months before the bankruptcy, and therefore did not constitute the acts of bankruptcy within subdivisions "a" and "b" of section 3. The validity of the lien depends upon the terms of the act speaking to that subject, but not upon the question whether the acts which resulted in the lien were acts which subjected the debtor to proceedings in bankruptcy. It is doubtless true that the debtor could not have been forced into bankruptcy because of the acts done by him; but under the law, when for any rea-

son bankruptcy has supervened and adjudication has been determined by the court, all liens which fall under the ban of section 67 are avoided, whether the debtor has been or could have been adjudicated a bankrupt for his acts with reference to any specific lien. We are constrained to the conclusion that by subdivision "f" of section 67 all liens obtained through legal proceedings "against a person who is insolvent" within four months of the bankruptcy are avoided. It is not within our province to speak of the policy of the act. It is sufficient to us that congress has so declared. It asserts the principle that, as between creditors, "equality is equity," and that the race of diligence must cease, with respect to legal proceedings against a person who is insolvent, at the commencement of four months preceding the filing of the petition. This conclusion does not prevent the honest debtor seeking to work out from embarrassments from receiving present aid to that end, and from giving proper security for the aid received. But the one advancing money must take a present security other than that obtained through legal proceedings against an insolvent.

The petition is dismissed, and the clerk will certify this ruling to the court below.