him to speculate upon his option, to lie in ambush for years, until changes in the conditions or markets make his interest plain, before he makes his choice. Silence, delay, acquiescence, or the use or retention of any of the fruits of the contract for any considerable length of time after a discovery of the fraud is in itself an exercise of the option, and constitutes a complete and irrevocable ratification of the transaction. Rugan v. Sabin, 10 U. S. App. 519, 531, 3 C. C. A. 578, 580, 53 Fed. 415, 418; Kinne v. Webb, 12 U. S. App. 137, 144, 4 C. C. A. 170, 174, 54 Fed. 34, 38; Stuart v. Hayden, 36 U. S. App. 462, 478, 18 C. C. A. 618, 627, 72 Fed. 402, 411; McLean v. Clapp, 141 U. S. 429, 12 Sup. Ct. 29, 35 L. Ed. 804; Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798. This rule is peculiarly applicable to cases of the character here in question, where the property in controversy is stocks of mining and other like corporations, which are speculative in character. Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798; Kinne v. Webb, 12 U. S. App. 137, 144, 4 C. C. A. 170, 174, 54 Fed. 34, 38. The appellant retained all the fruits of the contract and, pledge he seeks to avoid. He held Rucker bound by his retainer for more than two years, until the Wood litigation had ended and he had derived all the benefits of the contract. He repeatedly promised to pay the notes, and obtained forbearance in the enforcement of the notes and the pledge, after he knew all the facts which constituted the alleged fraud, and he was thereby irrevocably estopped from rescinding or avoiding them long before he presented his bill. Equity will not relieve from the burdens of a contract induced by fraud, at the suit of a complainant who has acquiesced in it and accepted its benefits for years after he had full knowledge of the facts which constituted the fraud. The decree below is affirmed.

---

### In re KEMP.

(District Court, D. Colorado. March 21, 1900.)

BANKRUPTCY—DISSOLUTION OF LIENS—ATTACHMENT.

The lien of an attachment levied upon property of an insolvent debtor within four months prior to the filing of his voluntary petition in bankruptcy will be dissolved by his adjudication as a bankrupt. If Bankr. Act, § 67, cl. "f," applies only to involuntary proceedings in bankruptcy, the case is covered by clause "c" of the same section, which relates to voluntary proceedings.

In Bankruptcy. On motion for the dissolution of an injunction and for the delivery of property of the bankrupt to petitioner.

H. S. Silverstein, for sheriff.

O. P. Grimes, for trustee.

HALLETT, District Judge (orally). A petition was filed January 15th and the adjudication was on the 20th of January last. In November prior to that, certain of the creditors, Adolph Hirsch and Simon Hirsch, took out a writ of attachment and levied it upon the goods of the bankrupt. This suit was pending at the time when the petition was filed and the adjudication made, and is still pending.

101 F.—44

On the 20th of March, upon, petition of the trustee, this court enjoined the sheriff of Teller county from selling the goods levied upon in the attachment suit; and, when the matter came on for hearing in the county court recently, it is said that the county court ordered the goods to be turned over to the trustee. The sheriff of Teller county has now moved the court to dissolve the injunction, which was issued on the 20th of March, and to require the trustee to turn over the goods to him; that is, to return the goods to him which he has delivered to the trustee under the order of the county court of Teller county. This motion must rest upon the ground that the attachment proceeding was not affected by the bankruptcy of the defendant in that suit. Upon that matter counsel for the sheriff contends that the question turns upon clause "f" of section 67 of the bankruptcy act. That clause declares that:

All "levies, judgments and attachments or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of the petition in bankruptcy against him should be deemed null and void in case he is adjudged a bankrupt."

Counsel contends that this clause of section 67 relates only to a case in which there may be an involuntary petition filed upon which adjudication shall be made, and not to a case in which a voluntary petition shall be filed by the bankrupt. Some courts have apparently so decided; but those courts appear to be of the opinion that the cases of adjudication upon a voluntary petition fall under clause "c" of the same section, and that clause "c" relates to voluntary cases, and clause "f" of section 67 to involuntary cases. The court of appeals of the Seventh circuit held that this clause "c" was in conflict with clause "f" of section 67, and that clause "f" was the only one that could be enforced; also, that clause "f" related to voluntary as well as involuntary bankrupts. In re Richards, 37 C. C. A.. 634, 96 Fed. 935. As stated before, other courts, circuit and district courts of the United States, have held that the two clauses, "c" and "f," may stand together, and that clause "c" may relate to voluntary cases. It is not necessary to decide in this case whether the view taken by the circuit court of appeals of the Seventh circuit be the correct one or not; but whether the case fall within clause "c," or within clause "f," the attachment must fall, as being one taken out within four months before the bankruptcy of Kemp. The adjudication of bankruptcy established the fact of insolvency, and under clause "c," the attachment having been taken out within four months before the bankruptcy, the bankrupt was insolvent at the time the proceeding in attachment was begun; and under that clause, if that be the one which is applicable to the case, the attachment fails as much as under clause "f" of the bankruptcy act. So that it must be said that the attachment taken out within four months of Kemp's bankruptcy was vacated and set aside by that proceeding on the part of Kemp,— by his becoming a bankrupt. And the plaintiffs in that attachment suit must stand upon the same footing as other creditors of the bankrupt. If the plaintiffs in that suit are entitled to anything for the care of the property pending the attachment, or if they are entitled to any part of the costs of that suit, they must apply before the

referee for the allowance of that claim as a preferred claim. There are decisions of the courts which show to what extent creditors in the position of the plaintiffs in the attachment suit may be reimbursed for the care of the property and the costs in the suit. Upon this, the motion of the sheriff of Teller county to have the property returned to him must be overruled.

In re KLINGAMAN.

(District Court, S. D. Iowa, E. D. May 22, 1900.)

Bankruptcy—Preferences—Transfer of Property.

Goods were sold on credit, with an agreement that the property was "pledged and hypothecated" to the vendors as collateral security for the payment of the price, and with authority to them to take possession and dispose of the goods, at their discretion, for security or reimbursement. It was not shown that the vendee was insolvent at this time; but afterwards the vendors, learning that he had become insolvent, procured the return to them of a portion of the goods, for the value of which they gave the vendee credit on the notes he had made for the purchase money. Within four months thereafter he became bankrupt. *Held*, that the vendors had received a preference, within the meaning of the bankruptcy act, by a transfer of property from the bankrupt, which was made at the time of the actual return of the goods to them, and not at the time of the contract of pledge and hypothecation; and, since its enforcement would enable them to obtain a larger proportion of their debt than other creditors, they could not prove a claim against the estate for the balance of the purchase money without surrendering the preference so received.

In Bankruptcy. On review of decision of referee in bankruptcy.

M. A. McCoid, for creditors.

SHIRAS, District Judge. From the certificate of the referee the facts in this case are shown to be as follows: On the 17th day of June, 1898, the firm of Luthy & Co., of Peoria, Ill., upon the order of Charles S. Klingaman, shipped to him some 4,000 pounds of binder twine; it being provided in the order that notes for the purchase price were to be given by Klingaman, payable on September 1, 1898, and it being also stipulated in the order that:

"All property delivered under this order, and the proceeds thereof, and the policies of insurance thereon, are hereby pledged and hypothecated to Luthy & Co. as collateral security for the payment as herein promised, and shall be held subject to their order, on demand, with authority to take possession and dispose of the same, at their discretion, for security or reimbursement."

On the 1st day of August, 1898, Luthy & Co., having learned that Klingaman was then insolvent, sent an agent to his place of business, who secured the return of $100 worth of the binder twine bought of Luthy & Co., for which credit was given Klingaman on the notes he had given for the purchase price of the twine. Within a few days thereafter Klingaman filed his petition in bankruptcy, and on the 12th of August, 1898, he was adjudged a bankrupt, and in due season a trustee of his estate was appointed. Luthy & Co. thereupon filed for allowance against the bankrupt estate a claim consisting of the