## Wallace v. Camp.

*Bankruptcy—Execution—Sale of bankrupt's property after decree of bankruptcy.*

An action of trespass will lie by a trustee in bankruptcy against a constable and certain creditors of the bankrupt at whose instance property of the bankrupt was sold under attachment proceedings after the debtor had been declared a bankrupt.

It appearing in evidence that the purchaser at the constable's sale had reasonable cause for inquiry as to the bankruptcy proceedings and that the attachments at the time of the sale were actually null and void under the provisions of clause *f*, section 67 of the bankruptcy act, he, the purchaser, was not protected by the proviso of said clause *f*. The property belonged to the creditors of the bankrupt, although the title had not actually vested in the trustee at the time of the sale in execution, and the trustee was entitled to binding instructions in his action against the constable and the plaintiffs in the attachment proceedings who had secured him in making the sale.

Argued May 22, 1900.   Appeal, No. 208, April T., 1900, by plaintiff, in suit of William Wallace, trustee of Thomas H. Rose, a bankrupt, against S. R. Camp et al., from judgment of C. P. Crawford Co., Sept. T., 1899, No. 184, on verdict for defendants. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.   Opinion by BEAVER, J.

Trespass.   Before THOMAS, P. J.

It appears from the record and evidence that execution was issued on attachment proceedings prior to a decree in bankruptcy, but the constable's sale was made after the decree was entered.   The goods in question were purchased by one of the several attachment creditors, all of whom gave a bond of indemnity to the constable.   The purchaser at the constable's sale had heard of the bankruptcy proceedings prior to sale of the goods in question by the constable.

The trustee in bankruptcy brought an action of trespass against the constable and the plaintiffs in the execution.

Plaintiff submitted among others the following points:

[2. That as to the defendants Snodgrass, Johnson, C. A. Bates, L. S. Hatton, Amos Flaw, Levi Bates, R. W. Hatton and McCormick, the uncontradicted evidence being that they had heard

of the proceedings in bankruptcy of T. H. Rose, before the sale of January 9, 1899, and the adjudication in bankruptcy being on December 22, 1898, they are liable in this action for the value of the property so sold and the verdict must be for the plaintiff. *Answer :* This point is affirmed, providing you find that they had the knowledge of that fact, or had such informa-tion as should have led a prudent man to have acquired that knowledge.] [3]

[3. That as to the defendants, Snodgrass, Johnson, C. A. Bates, L. S. Hatton, Amos Flaw, Levi Bates, R. W. Hatton and Mc-Cormick, the undisputed evidence being that the sale of the property of Thomas H. Rose was made on January 9, 1899, after he was adjudged bankrupt, the said defendants being the plaintiffs in the executions by virtue of which it is alleged the said property was sold, and having received the money there-from on their said executions, and having given the constable a bond to indemnify him for making such sale, they are liable for the value of the property so sold, and the verdict of the jury must be for the plaintiff. *Answer :* This point is re-fused.] [4]

[4. That the defendant, Amos Flaw, who purchased the cheese, after he heard of the bankruptcy proceedings, is liable for the value thereof, and the verdict, as to him, must be for the plaintiff. *Answer :* This point is affirmed if you find that Amos Flaw had knowledge of this fact, or had such informa-tion as should have led to that knowledge.] [5]

[5. That the defendant, S. R. Camp, the constable, having admitted that he had heard of the proceedings in bankruptcy of Thomas H. Rose before he made the sale of the property, is liable for the value thereof, and the verdict must be for the plaintiff. *Answer :* This point is affirmed if you find from the evidence that the constable, Camp, had knowledge of the bank-ruptcy proceedings, or had such information as should have led a prudent man to have discovered that fact.] [6]

[6. That under the evidence in the case the verdict of the jury must be for the plaintiff for the value of the property sold. *Answer :* This point is refused.] [7]

The court charged the jury in part as follows:

[Under our view of the law in this case, gentlemen of the

jury, we are of opinion that unless the constable, S. R. Camp, and the other defendants who were plaintiffs in the writs upon which S. R. Camp sold these articles had actual knowledge of the fact of Thomas H. Rose's insolvency, or had such information as would have given a reasonably prudent man such notice as would have led him to have acquired knowledge of the fact that Thomas H. Rose had been adjudged a bankrupt before the time of sale, that your verdict should be for the defendants.] [1] . . . .

[If you find they had actual knowledge or had such information as should have led a prudent man to discover the fact, your verdict will be for the plaintiff; otherwise for the defendants.] [2]

Verdict for defendants.    Plaintiff appealed.

*Errors assigned* were (1, 2) to portions of the judge's charge, reciting same.    (3–7) In answers to plaintiff's points, reciting points and answers.    (8) In not directing the jury to find a verdict for the plaintiff for the value of the property sold.

*Geo. W. Haskins*, with him *John O. McClintock*, for appellant.—The contention of the plaintiff in this case in the court below was, and is in this court, that when Thomas H. Rose was adjudged a bankrupt on December 22, 1898, the title to the property in question passed by virtue of that fact eo instante out of Thomas H. Rose, and that the attachments in this case, having been obtained within four months, to wit: within less than fifteen days prior to the filing of the petition and adjudication in bankruptcy, " were null and void," " and the property affected by them was wholly discharged and released from the same."    Certainly this is the meaning of section 67, clause *f* of the national bankrupt act of 1898: Connor v. Long, 104 U. S. 228.    To the same effect is the case of Claflin v. Houseman, 93 U. S. 130.

The adjudication of a person a bankrupt under the bankruptcy law of 1898 makes void an attachment execution issued previously, but within the four months on a judgment entered before the four months' period: Peck Lumber Co. v. Mitchell, 8 Pa. Dist. Rep. 203.

The plaintiff contends also that the action of the defendants in this case, the plaintiffs and constable in the attachments, were tortious, and that they are liable in trespass, and that the court below should have said so, and affirmed plaintiff's points and instructed the jury to find for the plaintiff.

The citation of authority would seem superfluous to the proposition that one who procures or directs a trespass is equally liable with the one who commits the trespass and may be liable when he is not: Deal v. Bogue, 20 Pa. 228; Ritter v. Sieger, 105 Pa. 400; McMurtrie v. Stewart, 21 Pa. 322; Drake v. Kiely, 93 Pa. 492; McCarthy v. DeArmit, 99 Pa. 63.

*Thomas Roddy* and *H. J. Humes*, for appellees.—Where property of the bankrupt is under levy, judgment or attachment if it be so at the time of the appointment of a trustee he may claim the property divested of such lien, as provided in clause *f*. But where the property has been sold under judicial process before the appointment of a trustee, issuing out of a court of competent jurisdiction, no right vests in said trustee.

The contention of defendants as distinguished from that of plaintiff is that when the property of Thomas H. Rose was seized by the constable by virtue of the attachments placed in his hands it was in gremio legis, and the only way to release the property from the officer's grasp was through remedies provided by law, that is, a plea of bankruptcy entered in the case, and then if refused by the justice an appeal or certiorari or an injunction from the United States court: that when the justice issued his attachments there was no question as to his jurisdiction of the subject-matter.    Therefore neither the constable nor the plaintiff were tort feasors, and they could only be made such by some legal notice on part of Bankrupt Rose or his assignee.    The question of notice was properly left to the jury by the court below and it found for the defendants.

OPINION BY BEAVER, J., July 26, 1900:

Clause *f* of section 67 of the national bankruptcy act of 1898, is as follows: "That all levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy, must or shall be deemed

null and void, in case he is adjudged a bankrupt, and the prop-
erty affected by the levy, judgment, attachment or other lien
shall be deemed wholly discharged and released from the same
and shall pass to the trustees as a part of the estate of the
bankrupt, unless the court shall, on due notice, order that the
right under such levy, judgment, attachment or other lien shall
be preserved for the benefit of the estate and thereupon the
same may pass to and shall be preserved by the trustee for the
benefit of the estate as aforesaid.   And the court may order
such conveyance as shall be necessary to carry the purposes of
this section into effect: provided that nothing herein contained
shall have the effect to destroy or impair the title obtained by
such levy, judgment, attachment or other lien of a bona fide
purchaser for value who shall have acquired the same without
notice or reasonable cause for inquiry."   In the first section of
said act, relating to the meaning of words and phrases it is
provided: (1) "A person against whom a petition has been
filed shall include a person who has filed a voluntary petition."
In In re Richards, 37 C. C. A. 634, it is held, the subject being
very fully discussed, that the two subdivisions, *c* and *f*, of sec-
tion 67 of the bankruptcy act relating to the effect of an alle-
gation of bankruptcy upon existing liens upon the property of
the bankrupt acquired through legal proceedings are antago-
nistic and irreconcilable and, therefore, in any case of conflict
between them the former must give way and the latter prevail.
We conclude, therefore, first, that there is no difference between
cases of voluntary and involuntary bankruptcy under clause *f*
of section 67 ; and, second, that, if there be any irreconcilable
difference between clauses *c* and *f*, so far as the present case is
concerned, the provisions of clause *f* must prevail.

It will be observed that by the terms of this clause the at-
tachments, under which the sale of the cheese in this case was
made, were null and void at the time of the sale and that the
proviso affects only a bona fide purchaser for value, at a sale,
who shall have acquired the same without notice or reasonable
cause of inquiry.   It does not protect the parties who made
the sale.   We have, therefore, the defendants making a sale of
property belonging to the plaintiff, upon attachments, which
were at the time of the sale absolutely null and void, the adju-
dication in bankruptcy having been had.   The court below prac-

tically so held but left it to the jury to say whether or not the defendants had notice or knowledge or reasonable ground for inquiry as to the bankruptcy of Rose, for whose estate the plaintiff is trustee. If the attachments at the time of the sale were actually null and void and the property attached was actually the property of the plaintiff, it may be doubted whether the defendants, who were the plaintiffs in those attachments, were in any way protected by the terms of the proviso to clause *f* above referred to. Be that as it may, however, it seems to us that in the present case there was nothing to be left to the jury, for the defendants themselves testify that there were rumors or allegations of the bankruptcy of Rose, as whose property the cheese was being sold. Camp, the constable, said, in answer to the question, " Had you heard that Mr. Rose, the defendant, as whose property that was sold, had been declared a bankrupt, before the sale ? " answered, " There was a rumor that he was a bankrupt." Flaw, the purchaser at the sale, testified as follows: " Q. You may state whether before the first sale you had heard anything about the bankruptcy of Mr. Rose. A. I did not. Q. State whether you did before the second sale hear anything said about it by anybody. A. I believe I heard something to that effect. Q. Were you present at the second sale ? A. Yes, sir." Similar testimony was given by Johnson, Snodgrass, and Bates, all of them defendants. As to those who thus testified it was, therefore, error to submit the question of notice or reasonable ground for inquiry to the jury. Their own testimony settled the question and as to it there was no dispute. We are, therefore, of opinion that the first, second, third, fourth, fifth and sixth specifications of error should be sustained.

The remaining specifications of error relate to the refusal of the court to give binding instructions for plaintiff. Such instructions, it seems to us, should have been given. The provisions of clause *f*, section 67, of the Bankruptcy Act are clear and unequivocal; the attachments at the time of the sale were actually null and void; the property belonged to the creditors of the bankrupt, although the title was not then actually vested in the trustee; the sale was, therefore, illegal. The purchaser admits such knowledge as put him upon inquiry. In other words, " he had reasonable cause for inquiry." He was, there-

fore, not protected by the proviso to this clause.    We see no objection to the form of the action; trespass was undoubtedly the proper remedy.

Judgment reversed and a new venire awarded.