## MORGAN et al. v. FIRST NAT. BANK OF MANNINGTON et al.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1906.)

Nos. 616, 642.

1. BANKRUPTCY—REVIEW—MODE—APPEAL—PETITION TO REVISE.

Where the validity of a trust deed given by a bankrupt within four months of the institution of bankruptcy proceedings, as against other creditors, arose in the bankruptcy proceedings in determining the priority of claims, such question was reviewable by the Circuit Court of Appeals on a petition to superintend and revise, as authorized by Bankr. Act July 1, 1898, c. 541, §§ 23, 24, 30 Stat. 552, 553 [U. S. Comp. St. 1901, p. 3431], and not by appeal.

2. SAME—PREFERENCE—TRUST DEEDS—VALIDITY.

Where a trust deed was executed by a bankrupt to secure an antecedent debt without any actual fraud within four months prior to the institution of bankruptcy proceedings, and was intended to create a preference, and was accepted for that purpose at a time when the bankrupt was insolvent, and it resulted in giving a preference, it was avoided by the bankrupt's adjudication as a bankrupt, as provided by Bankr. Act July 1, 1898, c. 541, §§ 60a, b, 67e, 30 Stat. 562, 564 [U. S. Comp. St. 1901, pp. 3445, 3449].

3. SAME—INVALIDITY UNDER STATE LAWS.

A trust deed securing an antecedent debt without a new consideration, executed by a corporation while insolvent for the purpose of prefering one creditor over another, which was accepted for that purpose, and operated as a preference, was void provided it was assailed within four months of the recordation thereof, as provided by Code W. Va. 1899, c. 74, § 2, and was therefore also void as against the grantor's creditors in bankruptcy, as provided by Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449].

4. SAME—CONTRACT—RELATION.

Where a contract providing for the execution of a trust deed to secure bonds of a corporation given for advances was not recorded, a trust deed executed pursuant to such contract within four months prior to the institution of bankruptcy proceedings could not take effect by relation as of the date of the contract, in order to sustain the same as against unsecured creditors of the bankrupt.

5. COURTS—FEDERAL COURTS—RULES OF DECISION.

In determining the validity of a mechanic's lien in a bankruptcy proceeding, the federal courts will be governed by the state laws.

Appeal from, and Petition for Revision of Proceedings in, the District Court of the United States for the Northern District of West Virginia, at Clarksburg.

On the 16th day of May, 1903, five gentlemen of the town of Cameron, W. Va., consisting of A. E. Fox and others, as parties of the first part, entered into an agreement with the Mannington Realty Co., party of the second part, and the First National Bank of Mannington, W. Va., and others, parties of the third part, to construct, build, and equip a pottery plant. Said Fox and others were to construct the plant, the said Mannington Realty Company to donate and convey on or before the 26th day of May, 1903, three acres of land to said Fox and others, promoters, and the First National Bank of Mannington and others, parties of the third part, were to furnish the money. The contract provided that the deed for the three acres of land should be made to A. E. Fox and others, the parties of the first part, and upon the charter and organization of the pottery company said Fox and others were to convey said land to the pottery company. The said Fox and others, parties of the first part, were to execute to the said parties of the third part their interest-bearing gold bonds, to become due on the 1st day of January, 1904, and to be dated and delivered to the parties of the third part as money was needed in the construction and equipment of the plant; and the agreement further provided that the said bonds so executed should be taken up and canceled, and the stock or gold bonds of the pottery company, or both such stock and bonds, to be secured by deed of trust upon the whole property, should be substituted, and the said parties of the first part released from all responsibility for their said notes. Most of the provisions of said agreement were carried out. The deed to Fox and others, however, was not made, and said Fox and others waived this requirement; and, some months after the same was to have been executed, directed that the Mannington Realty Company make the conveyance direct to the Augusta Pottery Company, which was done on the 29th day of December, 1903, and recorded on the 15th day of January, 1904. The plant was built and equipped during the summer and fall of 1903 in the name of the Augusta Pottery Company; the company having been incorporated in that name by the said Fox and others shortly after the contract was entered into of the 16th day of May, 1903, and pursuant to said agreement. The deed to the land was not made and recorded until the dates above mentioned, and the said contract was kept in the possession of the parties in interest, was not known of, and never put to record until it was incorporated in the deed from the Mannington Realty Company of the 29th day of December, 1903, and admitted to record on the 15th day of January, 1904, eight days after the deed of trust had been executed and recorded by the said Augusta Pottery Company, as contemplated in the said agreement, mortgaging its property to cover its bonded indebtedness. The mortgage bore the date of the 1st day of January, 1904, and was recorded on the 7th day of the same month, was executed pursuant to a resolution passed at a meeting of the board of directors and of the stockholders of said Augusta Pottery Company held on the 16th day of November, 1903, and secured a bond issue of $45,000. During the construction of the plant, the parties of the third part to said agreement, being the appellees in this appeal, from time to time advanced money, according to the terms of the contract of the 16th day of May, 1903, to the said A. E. Fox and others, and accepted the notes of said Fox and others for the amount of their advances, as aforesaid, and as was contemplated by said agreement; and after the execution of the mortgage aforesaid, all of said notes of said Fox and others were duly taken up by said Augusta Pottery Company, and the bonds of said company so secured regularly substituted in their place, and the said pottery company assumed the interest-bearing gold bonds of said Fox and others to the banks and others, the parties of the third part to the said contract furnishing the money, all of which was done long after the money was furnished under said contract, and used in the construction and equipment of the said plant, and within four months of the time of the inauguration of the involuntary bankruptcy proceedings herein on the 23d day of April, 1904. The said plant was duly constructed and equipped in the name of the Augusta Pottery Company, and the said company contracted

debts at various times, for some of which the creditors were entitled to mechanics' liens under the laws of the state of West Virginia, and upon the recordation of the mortgage aforesaid and the title deeds to the property, and within the time provided by the statutes of West Virginia, filed their mechanics' liens, claiming a lien upon the property of the said pottery company prior to said bonded indebtedness. These debts amounted in the aggregate to some $12,000, of which $6,025.22 was covered by mechanics' liens. The unsecured creditors having filed their involuntary petition in bankruptcy against, the pottery company, the same was regularly adjudged bankrupt, and pending. such proceedings the said real estate and plant was sold, from which was realized the sum of $38,000. The case was duly referred to the referee, who decided that out of the $38,000 should first be paid the costs of sale, certain unpaid taxes, and costs of the bankruptcy proceedings; second, two labor claims, aggregating $66.01; and, third, the mechanics' liens aforesaid; and that the amount remaining, of $29,297.73, should be distributed pro rata between the unsecured creditors and the bonded indebtedness of $45,000, on the basis of 61.68 per cent.; the referee's conclusion being that said mortgage was avoided by reason of the bankruptcy proceedings, it having been executed to secure payment of an antecedent debt. From this decision of the. referee an appeal was taken by the holders of the mortgage bonds, the appellees herein, to the United States District Court, and that court reversed the action of the referee in as far as he, held that the mortgage given by the bankrupt company was avoided by the bankruptcy proceedings, and. that the mechanics' lien took precedence over such mortgage indebtedness, and placed the unsecured creditors upon a footing with the mortgage bondholders. From this decision the supply lien creditors, the bankrupt's trustee, and certain of the unsecured creditors appealed to this court. After the appeal was taken, a motion was regularly made to dismiss the same, because an appeal was not the proper method of presenting the questions involved in this court, and thereupon the appellants regularly filed their petition for review, and presented the same record, which is case No. 642, the number of the case on appeal being 616.

Scott C. Lowe, for appellants.
C. A. Snodgrass, for appellees.

Before PRITCHARD, Circuit Judge, and WADDILL and KELLER, District Judges.

WADDILL, District Judge, after stating the facts as above, delivered the opinion of the court.

We are first called upon to determine whether this court can afford the relief sought, either by appeal or on motion for review under the bankruptcy act; and, if so, which is the appropriate proceeding. Just when one or other of the remedies referred to is applicable may be said to be not free from doubt under the existing bankruptcy act, and as to which there has been much diversity of view by the different courts. But, so far as the questions arising in this case are concerned, it does not seem to the court that there is room for serious controversy as to which is the proper remedy to be adopted, and we shall not therefore enter into any general discussion thereof, or attempt to harmonize the apparently conflicting views of the courts on the subject. The question here is one arising in bankruptcy proceedings; that is, in the administration of the estate in bankruptcy, as distinguished from a controversy at law or in equity arising in the course of bankruptcy proceedings, such as is clearly contemplated by sections 23 and 24 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 552, 553 [U. S. Comp. St. 1901, p. 3431]. Denver Nat. Bank v.

Klug, 186 U. S. 202, 205, 22 Sup. Ct. 899, 46 L. Ed. 1127; In re Friend, 134 Fed. 778, 67 C. C. A. 500. The debt is not disputed, and the point sought to be reviewed is one of law, arising upon the determination of the validity of a trust deed executed by the bankrupt company within four months of the institution of the bankruptcy proceedings, and hence belongs clearly to the class of cases made subject to review by this court under its general power to "superintend and revise in matter of law the proceedings of the several inferior courts of bankruptcy." Bankr. Act July 1, 1898, c. 541, 30 Stat. 553, § 24b [U. S. Comp. St. 1901, p. 3432]. This view has been taken by the Circuit Courts of Appeals of several of the circuits, notably, in the First, Sixth, and Seventh. In re Rouse, Hazard & Co., 91 Fed. 96, 33 C. C. A. 356; In re Richards, 96 Fed. 935, 37 C. C. A. 634; Courier Journal Co. v. Schaefer-Meyer Brewing Co., 101 Fed. 699, 41 C. C. A. 614; In re Worcester County, 102 Fed. 808, 42 C. C. A. 637; Note to In re Eggert, 102 Fed. 735, 43 C. C. A. 13, 14, 16, 17; In re Mueller, 135 Fed. 711, 68 C. C. A. 349. The latter is a decision of the Circuit Court of Appeals for the Sixth Circuit, and to the opinion of President Lurton of that court reference is especially made, as containing an able and interesting discussion of the general subjects of appeals and review in bankruptcy cases from the District Courts of the United States.

Second. Coming to the merits of the case, we are called upon to pass upon the effect of bankruptcy proceedings on the trust deed on its plant and other property, given by the bankrupt within four months of the institution of the bankruptcy proceedings, and whether the bonded indebtedness secured under such deed of trust takes precedence over certain mechanics' liens duly perfected and recorded in the proper courts of West Virginia against the bankrupt company for debts incurred during the construction of its plant, as well as the effect of the same upon the unsecured creditors of the company. The following extracts from the provisions of the present bankruptcy act as amended have special reference to the case.

"Sec. 60a. Preferred creditors. A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after filing the petition, and before the adjudication, * * * made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. * * *" Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445].

"Sec. 60b. If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

"Sec. 67e. That all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act, and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair con-

sideration; * * *. And all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory, or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt." 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449].

There appears to be nothing in this record to indicate that any actual fraud was contemplated or had in the making of the trust deed in question and the acceptance of the securities thereunder, but that the same was intended to create a preference; and the securities accepted for that purpose, and at a time when the grantor in the deed was insolvent, and resulted in giving such preference, is manifest; and it is equally clear that the trust deed, having been made within four months of the filing of the bankruptcy petition, is avoided by the adjudication of the grantor therein as a bankrupt. Nothing is better settled under the present bankruptcy act than that all conveyances, transfers, or incumbrances, other than for value or a present consideration, given by a bankrupt within four months of the filing of the petition in bankruptcy against him, either for the purpose of hindering, delaying, or defrauding creditors, or giving one a preference over another, or the effect of which is to enable any one creditor to obtain a greater percentage of his debt than any other of such creditors of the same class, become inoperative and null and void upon the adjudication in bankruptcy. Wilson v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147; In re Richards, 96 Fed. 935, 37 C. C. A. 634; City National Bank v. Bruce, 109 Fed. 69, 48 C. C. A. 236; Stedman v. Bank of Monroe, 117 Fed. 237, 54 C. C. A. 269; Pollock v. Jones, 124 Fed. 163, 167, 61 C. C. A. 555; Collier on Bankruptcy (5th Ed.) 454, 456, 530, and cases cited. The trust deed was, moreover, void under the statute of West Virginia to the extent that it sought to prefer one creditor over another, provided the same was assailed within four months of the recordation thereof (section 2, c. 74, Code W. Va. 1899), and by reference to section 67e of the bankruptcy act, supra, such invalidity is expressly recognized.

Third. Nothing that has been said herein is intended in any way to militate against the right of the bankrupt company to execute the trust deed in question for a present consideration; but confessedly in this case the deed was executed to secure an antecedent debt, and there was no claim that at the time of its execution there was a new or present consideration moving from the beneficiaries under the deed to the said company. On the contrary, the money due to the appellees herein, who accepted the bonds secured by said mortgage or trust deed, had long theretofore been advanced to the original promotors of the bankrupt company for and on account of said company, and had been used by said promotors in the construction and equipment of the plant of the bankrupt company.

Fourth. The suggestion that the trust deed in this case should relate back and become effective as of the date of the contract of the

16th day of May, 1903, and therefore be treated as a transaction not void by the bankruptcy proceedings, is entirely untenable. Such would not be the result if the grantor in such trust deed had been a party to the contract, if for no other reason than because of the nonrecordation thereof; and, not being a party, it assuredly could not serve to give such extension, and enable the bankrupt company to avoid the provisions of the bankrupt law, and secure its creditors one over another. The case of City Nat. Bank v. Bruce, 109 Fed. 69, 48 C. C. A. 236, supra, a decision of this court, would seem to be conclusive of this question had the bankrupt been a party to the contract. In that case three notes were secured by the bankrupt in October, 1899, by trust deed upon his property, the last of which notes fell due on the 9th of January, 1900, and on that day a new trust deed was executed, securing the last note of $919 and $2,681 in addition. Upon bankruptcy proceedings inaugurated within four months after the latter conveyance, the court held the deed only good for the amount advanced at the time of its execution on the 9th day of January as the present consideration, and rejected the $919; the October deed securing the same never having been admitted to record. The contract of the 16th day of May, 1903, giving it the greatest possible effect, and treating it as an undertaking of the bankrupt company to make a conveyance, assuredly would have no greater effect than one actually made in the case referred to and not recorded. In re Ronk (D. C.) 111 Fed. 154; Pollock v. Jones, 124 Fed. 163, 166, 61 C. C. A. 555; In re Dismal Swamp Contracting Co. (D. C.) 135 Fed. 415. What is the effect of an executory agreement in writing, stipulating for the execution in future of a mortgage or deed of trust, has been the subject of review by the courts; and in Atkinson v. Miller, 34 W. Va. 118, 11 S. E. 1007, 9 L. R. A. 544, it was expressly held that to give effect to such instrument, even as an equitable mortgage, it was necessary it should be recorded to become effective against creditors and purchasers without notice. In Feely v. Bryan, 55 W. Va. 586, 588, 589, 47 S. E. 307, in interpreting section 2 of chapter 74 of the Code of 1899 of that state, supra, the court decided that if one loaned money to a solvent person, with an agreement that a mortgage was to be made on certain property to secure the loan, and later, when insolvent, the borrower makes the mortgage, it is not a good lien as to creditors existing at the time of the recordation of the mortgage. These latter decisions are of special importance in this case, since the courts of bankruptcy follow the state law in ascertaining the validity and priority of liens against property of bankrupts. Collier on Bankruptcy (5th Ed.) 522; Loveland (2d Ed.) 582, 595.

Fifth. In argument counsel for appellees question the sufficiency of the several mechanics' liens reported upon favorably by the referee. No specific review seems to have been asked of the district judge from the decision of the referee in this respect, and certain it is the district judge in the order now under review does not appear to have questioned the action of the referee in passing upon the validity of the mechanics' liens themselves, but, on the contrary, treated them as

valid, and determined only the order of priority of the bonded indebtedness of the bankrupt over said mechanics' liens. It is not entirely clear, therefore, that this question is before the court at all; but upon the assumption that it is, the conclusion reached by us is that the said several mechanics' liens allowed by the referee, with the exception of the lien of the Pittsburg Gage & Supply Company, have been perfected and secured in substantial conformity with the laws of West Virginia, and that they constitute valid liens, enforceable in bankruptcy against the estate of the bankrupt company. The laws giving this class of lien should be liberally construed, so as to secure rights intended to be preserved; and certainly, so far as these particular liens are concerned, there is no such defect in them as would justify their rejection. The statute securing liens to mechanics, laborers, materialmen, and others will be found in sections 2 and 3 of chapter 75 of the Code of 1899 of West Virginia, and Cushwa v. Improvement L. & B. Ass'n, 45 W. Va. 490, 32 S. E. 259, is a comparatively recent and interesting discussion of the subject of such liens and their order of priority.

Regarding the claim of the Pittsburg Gage & Supply Company for $2,193.15, the mechanic's lien in that case does not appear to conform to the laws of the state of West Virginia as construed by the Supreme Court of Appeals of that state, by which decision we feel bound in determining upon the validity of the statutory lien enforceable in bankruptcy. The precise question raised as to this lien—namely, whether the affidavit supporting this lien, taken before a notary public in the state of Pennsylvania, was properly authenticated—was decided in the case of Lockhead v. Berkley Springs W. & I. Co., 40 W. Va. 553, 21 S. E. 1031, and such an authentication as we have in this case was therein declared to be insufficient under the laws of West Virginia, and the mechanic's lien declared on that account invalid. The claim of the Pittsburg Gage & Supply Company will therefore be treated only as an unsecured claim in the future conduct of this case.

Sixth. It follows from what has been said that case No. 616, being the appeal, should be dismissed, and the relief afforded herein given in No. 642, being the case coming under the section of the bankrupt act "to superintend and revise, in matter of law, the proceedings of the several inferior courts of bankruptcy," that the action of said court be reversed, and the cause remanded thereto, to be proceeded in hereafter in accordance with the views herein expressed.